UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K.N.N., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 23-2748 (APM) |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER AND DISMISS**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK,
Chief, Civil Division

STEPHEN DEGENARO
D.C. Bar #1047116
KAITLIN K. ECKROTE
D.C. Bar #1670899
Assistant United States Attorneys

February 20, 2024

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 1

I.       Factual Background ............................................................................................. 1

     A.   Allegations Relating to K.N.N. ............................................................. 2

     B.   Allegations Relating to R.N. ................................................................. 3

     C.   Allegations Relating to C.M. ................................................................ 4

     D.   Allegations Relating to E.U. ................................................................. 4

     E.   Other Allegations ................................................................................. 5

II.     Plaintiffs' Exhaustion of Administrative Remedies .......................................... 6

III.    The Instant Complaint........................................................................................ 7

LEGAL STANDARDS .................................................................................................. 8

I.       Rule 12(b)(1)...................................................................................................... 8

II.     Rule 12(b)(3)...................................................................................................... 9

III.    Rule 12(b)(6).................................................................................................... 10

ARGUMENT ................................................................................................................ 11

I.       The Court Should Transfer This Action. ......................................................... 11

     A.   This Case Could Have Been Brought in the Northern District of Texas. .................... 13

     B.   The Relevant Factors Support Transferring this Case to the Northern District of Texas. 14

II.     If Not Transferred, Plaintiffs' Claims Should Be Dismissed for Several Reasons. ......... 19

     A.   Venue Is Improper Because Plaintiffs Plead No Plausible, Cognizable Claims Predicated on D.C.-Based Actions or Omissions by Defendants. .................................................. 20

     B.   Plaintiffs Have Failed to Exhaust Certain Administrative Remedies by Failing to Present Them to the Department and ICE Pre-Complaint.......................................................... 24

     C.   Plaintiffs' D.C.-Based Torts Fail for Several Additional Reasons ............................... 26

D.    The Adequate Remedy Bar Under the APA Forecloses Plaintiffs' *Accardi* Doctrine Claims. .................................................................................................................... 31

CONCLUSION.................................................................................................................................... 34

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abhe & Svoboda, Inc. v. Chao,*
   508 F.3d 1052 (D.C. Cir. 2007) .......................................................................... 11

*Abusadeh v. Chertoff,*
   Civ. A. No. 06-2014 (CKK), 2007 WL 2111036 (D.D.C. July 23, 2007) ............... 20

*Aftab v. Gonzalez,*
   597 F. Supp. 2d 76 (D.D.C. 2009) ................................................................. 15, 16

*Al-Owhali v. Ashcroft,*
   279 F. Supp. 2d 13 (D.D.C. 2003) ...................................................................... 9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................. 10, 11, 31

*Attkisson v. Holder,*
   241 F. Supp. 3d 207 (D.D.C. 2017) .................................................................... 23

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ......................................................................................... 10

*Benoit v. Dep't of Agric.,*
   608 F.3d 17 (D.C. Cir. 2010) ............................................................................. 24

*Black v. City of Newark,*
   535 F. Supp. 2d 163 (D.D.C. 2008) ..................................................................... 9

*Bourdon v. Dep't of Homeland Sec.,*
   235 F. Supp. 3d 298 (D.D.C. 2017) ............................................... 14, 15, 17, 18

*Bowen v. Massachusetts,*
   487 U.S. 879 (1988) ......................................................................................... 32

*Bown v. Hamilton,*
   601 A.2d 1074 (D.C. 1992) ............................................................................... 28

*Bryant v. Carlson,*
   652 F. Supp. 1286 (D.D.C. 1987) ...................................................................... 25

*Cameron v. Thornburgh,*
   983 F.2d 253 (D.C. Cir. 1993) ..................................................................... 12, 20

*Cao v. United States,*
   156 F. App'x. 48 (9th Cir. 2005) ........................................................................ 28

*Charles v. United States,*
   Civ. A. No. 21-0864 (CKK), 2022 WL 558181 (D.D.C. Feb. 24, 2022) ............... 27

*Chaverra v. Immigr. & Customs Enf't,*
   Civ. A. No. 18-0289 (JEB) 2018 WL 4762259 (D.D.C. Oct. 2, 2018) ................. 32

*Chien v. United States,*
   Civ. A. No. 17-2334 (CKK), 2019 WL 4602119 (D.D.C. Sept. 23, 2019) ............ 27

*Coltrane v. Lappin,*
   885 F. Supp. 2d 228 (D.D.C. 2012) .................................................................... 23

*Commodity Futures Trading Comm'n v. Nahas,*
   738 F.2d 487 (D.C. Cir. 1984) ............................................................................ 8

*Cont'l Grain Co. v. The Barge FBL-585*,
   364 U.S. 19 (1960) ................................................................................................ 24

*Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*,
   75 F. Supp. 3d 353 (D.D.C. 2014) ............................................................ 11, 12, 13

*Curran v. Holder*,
   626 F. Supp. 2d 30 (D.D.C. 2009) ............................................................................ 8

*District of Columbia v. Tulin*,
   994 A.2d 788 (D.C. 2010) ...................................................................................... 29

*Edmonds v. United States*,
   436 F. Supp. 2d 28 (D.D.C. 2006) .......................................................................... 27

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Hum. Servs.*,
   396 F.3d 1265 (D.C. Cir. 2005) .............................................................................. 32

*Fletcher v. Dep't of Just.*,
   17 F. Supp. 3d 89 (D.D.C. 2014) ............................................................................ 33

*GAF Corp. v. United States*,
   818 F.2d 901 (D.C. Cir. 1987) ................................................................................ 25

*Garcia v. Vilsack*,
   563 F.3d 519 (D.C. Cir. 2009) ................................................................................ 32

*Goldlawr, Inc. v. Heiman*,
   369 U.S. 463 (1962) ................................................................................................ 12

*Griffin v. Acacia Life Ins. Co.*,
   925 A.2d 564 (D.C. 2007) ...................................................................................... 30

*Haines v. Gen. Pension Plan of Int'l Union of Operating Eng'rs*,
   965 F. Supp. 2d 119 (D.D.C. 2013) ....................................................................... 11

*Hamilton v. Paulson*,
   Civ. A. No. 07-1365 (RBW), 2008 WL 4531781 (D.D.C. Oct. 10, 2008) .............. 10

*Herbert v. Nat'l Acad. of Sci.*,
   974 F.2d 192 (D.C. Cir. 1992) .................................................................................. 9

*Hoeller v. Soc. Sec. Admin.*,
   670 F. App'x 413 (7th Cir. 2016) ........................................................................... 25

*Hoffman v. District of Columbia*,
   643 F. Supp. 2d 132 (D.D.C. 2009) ....................................................................... 25

*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*,
   937 F. Supp. 2d 18 (D.D.C. 2013) ......................................................................... 11

*James v. Booz-Allen*,
   227 F. Supp. 2d 16 (D.D.C. 2002) ......................................................................... 12

*Jerome Stevens Pharmacy, Inc. v. FDA*,
   402 F.3d 1249 (D.C. Cir. 2005) ................................................................................ 9

*Kassem v. Wash. Hosp. Ctr.*,
   513 F.3d 251 (D.C. Cir. 2008) ................................................................................ 29

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) .................................................................................................. 8

*Kotsch v. District of Columbia*,
   924 A.2d 1040 (D.C. 2007) .................................................................................... 29

*Kugel v. United States*,
   947 F. 2d 1504 (D.C. Cir. 1991) ............................................................................ 27

*Liles v. United States*,
   638 F. Supp. 963 (D.D.C. 1986) ........................................................................... 25
*Mac'Avoy v. Smithsonian Inst.*,
   757 F. Supp. 60 (D.D.C. 1991) ............................................................................. 25
*Macharia v. United States*,
   238 F. Supp. 2d 13 (D.D.C. 2002) ........................................................................ 31
*McAfee LLC v. U.S. Citizenship & Immigr. Servs.*,
   Civ. A. No. 19-2981 (DLF), 2019 WL 6051559 (D.D.C. Nov. 15, 2019) ........................ 14, 16
*McNeil v. United States*,
   508 U.S. 106 (1993).................................................................................... 24, 25, 26
*Menifee v. Dep't of the Interior*,
   931 F. Supp. 2d 149 (D.D.C. 2013) ....................................................................... 28
*Modaressi v. Vedadi*,
   441 F. Supp. 2d 51 (D.D.C. 2006) ........................................................................... 9
*Mohammadi v. Scharfen*,
   609 F. Supp. 2d 14 (D.D.C. 2009) ......................................................................... 20
*Morowitz v. Marvel*,
   423 A.2d 196 (D.C. 1980) ..................................................................................... 28
*Myers v. Holiday Inns, Inc.*,
   915 F. Supp. 2d 136 (D.D.C. 2013) ....................................................................... 10
*Oglesby v. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) ................................................................................ 25
*Page v. Comey*,
   628 F. Supp. 3d 103 (D.D.C. 2022) ....................................................................... 28
*Park v. Howard Univ.*,
   71 F.3d 904 (D.C. Cir. 1995) ................................................................................ 25
*Pasem v. United States Citizenship & Immigr. Servs.*,
   Civ. A. No. 20-344 (CRC), 2020 WL 2514749 (D.D.C. May 15, 2020) ........................... 15
*Pendleton v. Mukasey*,
   552 F. Supp. 2d 14 (D.D.C. 2008) ......................................................................... 10
*Peter B. v. United States*,
   579 F. Supp. 78 (D.D.C. 2008) ............................................................................. 27
*Polidi v. Boente*,
   Civ. A. No. 21-2875 (FYP), 2022 WL 3594594 (D.D.C. July 18, 2022)................... 17, 21, 23
*Reliable Automatic Sprinkler Co., Inc., v. Consumer Prod. Safety Comm'n*,
   324 F.3d 726 (D.C. Cir. 2003) .............................................................................. 33
*Reuber v. United States*,
   750 F.2d 1039 (D.C. Cir. 1984) ....................................................................... 22, 23
*Sanchez-Mercedes v. Bureau of Prisons*,
   453 F. Supp. 3d 404 (D.D.C. 2020) ................................................................... 9, 10
*Schuler v. United States*,
   628 F.2d 199 (D.C. Cir. 1980) .............................................................................. 25
*Spotts v. Untied States*,
   562 F. Supp. 2d 46 (D.D.C. 2008) ................................................................ 12, 13, 24
*Taylor v. Appleton*,
   30 F.3d 1365 (11th Cir. 1994) .............................................................................. 26

*Trout Unlimited v. Dep't of Agric.*,
    944 F. Supp. 13 (D.D.C. 1996) ................................................................... 15
*United States ex rel. Accardi v. Shaughnessy*,
    347 U.S. 260 (1954) ................................................................................... 8
*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ................................................................................... 24
*W. Watersheds Project v. Pool*,
    942 F. Supp. 2d 93 (D.D.C. 2013) ............................................................. 18
*Wagdy v. Sullivan*,
    Civ. A. No. 16-2164 (TJK), 2018 WL 2304785 (D.D.C. May 18, 2018) .............. 29
*Whelan v. Abell*,
    953 F.2d 663 (D.C. Cir. 1992) .................................................................... 28
*Wolfram Alpha LLC v. Cuccinelli*,
    490 F. Supp. 3d 324 (D.D.C. 2020) .............................................. 15, 16, 17, 19
*Yuanxing Liu v. Lynch*,
    Civ. A. No. 14-1516 (APM), 2015 WL 9281580 (D.D.C. Dec. 8, 2015)............... 23

**Statutes**

28 U.S.C. § 1346(b) ........................................................................................ 22
28 U.S.C. § 1391(e)(1) .................................................................................... 14
28 U.S.C. § 1402(b) .......................................................................... 13, 21, 23
28 U.S.C. § 1404(a) .................................................................................. 11, 24
28 U.S.C. § 1406(a) .................................................................................... 9, 12
28 U.S.C. § 2401(b) ........................................................................................ 25
28 U.S.C. § 2675(a) ........................................................................................ 25
28 U.S.C. § 2680(h) ........................................................................................ 27
section 1404 or 1406 ................................................................................. 13, 24

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................. 8, 9
Fed. R. Civ. P. 12(b)(3)................................................................................... 10
Fed. R. Civ. P. 12(b)(6)............................................................................. 10, 11
Fed. R. Civ. P. 12(h)(3)..................................................................................... 9

**INTRODUCTION**

This case belongs in the United States District Court for the Northern District of Texas. Plaintiffs complain of alleged misconduct occurred in the Northern District of Texas; they only exhausted administratively claims pertaining to acts or omissions that occurred within the Northern District of Texas; and they allege that Defendants Department of Homeland Security (the "Department") and Immigration and Customs Enforcement ("ICE") failed to abide by agency regulations through conduct that allegedly occurred exclusively within the Northern District of Texas. This case contains no meaningful connection to this District.

Accordingly, Defendants respectfully request that this Court grant their motion to dismiss for improper venue or, alternatively, transfer the case to the Northern District of Texas. Specifically, this Court should dismiss this case for improper venue because Plaintiffs plead no plausible, cognizable claims predicated on any act or omission occurring within this District. However, transfer in the interests of justice would be appropriate in these circumstances because Plaintiffs should have brought this case in the Northern District of Texas originally, and both the private and public interest factors strongly weigh in favor of transferring the case.

**BACKGROUND**

I.    <u>**Factual Background**</u>

Plaintiffs K.N.N., R.N., C.M., and E.U. are Cameroonian men who sought asylum in the United States after being persecuted by the Cameroonian government due to their membership in the country's English-speaking Anglophone minority. ECF No. 1., Compl. ¶¶ 5, 25-28. Plaintiffs K.N.N., R.N., and C.M. are currently outside of the United States. *Id.* ¶¶ 25-27. Plaintiff E.U. has been granted Temporary Protected Status within the United States, and his asylum case is pending before the immigration court in Phoenix, Arizona. *Id.* ¶ 28. They bring this case against the United States, the Department, ICE, and the heads of those agencies in their official capacities.

### A.    Allegations Relating to K.N.N.

Plaintiff K.N.N. arrived in the United States on September 16, 2018, seeking asylum.  *Id.*

¶ 39.  Between his entry and deportation in November 2020, K.N.N. was detained in several

different facilities—none of them within this District.  *Id.* ¶ 40 (alleging that K.N.N. was held in

Tallahatchie County Correctional Facility in Mississippi, Pine Prairie Detention Center in

Louisiana, La Salle Detention Facility in Jena, Louisiana [now known as Central Louisiana ICE

Processing Center], and Etowah County Jail in Alabama).  K.N.N. contends that he suffered from

several medical conditions during his detention for which the medical staff at unidentified facilities

failed to provide him with adequate medical treatment.  *Id.* ¶ 41.  Specifically, K.N.N. alleges that

he complained to a doctor in the Pine Prairie Detention Center that he was depressed because he

was denied asylum, and, in response, ICE "shackled" him, transferred him to the La Salle

Detention Facility, "left alone and naked in a freezing cold cell" for two days, and later transferred

him back to Pine Prairie.  *Id.* ¶ 42.  He also alleges that staff at the Etowah Detention Center in

Alabama gave him incorrect mailing information that thwarted his attempts to appeal his asylum

claim.  *Id.* ¶ 43.  Prior to October 13, 2020, K.N.N. alleges that ICE officers in Jena, Louisiana

pushed him to the floor, pinning him and shackling him on the ground.  *Id.* ¶¶ 93-95.

Later that same day, K.N.N. was taken to the Fort Worth Alliance Airport, but was removed

from the flight at the last minute, held in isolation for approximately two weeks, and denied the

opportunity to speak with an attorney to seek asylum for him in Canada.  *Id.* ¶¶ 108-10. The Fort

Worth Alliance Airport is located within the Northern District of Texas.  K.N.N. further alleges

that ICE official shot his legs with rubber bullets, threw him down on the ground, and pushed his

face into the ground after he resisted being placed in restraints.  *Id.* ¶¶ 111-13.  The officers then

placed K.N.N. in five-point restraints and the "WRAP," which allegedly caused him pain.  *Id.*

¶ 113-14.  K.N.N. further alleges that the officers failed to perform a health assessment of him

prior to their use of rubber bullets, denied him medical care after the use of force, denied him the use of the restroom, and went through his bags that contained his asylum file which indicated that he had protested the Cameroonian government.  *Id.* ¶¶ 115-16, 189.  K.N.N. alleges that ICE left him in the WRAP for hours during his deportation flight.  *Id.* ¶ 118.

### B.    Allegations Relating to R.N.

Plaintiff R.N. arrived in the United States in January 2018, and spent time in several facilities in Florida until August 2019 and in Mississippi thereafter.  *Id.* ¶¶ 44-45.  R.N. alleges that he was also denied medical attention on unspecified dates in these facilities.  For example, he alleges that he only received Tylenol and ibuprofen for a variety of ailments that he experienced. He also complained of a dizzy spell as well.  *Id.* ¶¶ 46-48.  After he was transferred to the Adams County Correctional Center in Mississippi in August 2019, R.N. alleges that he was denied glasses for his blurry vision and subjected to "isolation" because he tested positive for COVID-19.  *Id.* ¶¶ 50-51.  R.N. admits, however, that medical professionals at the facility provided him with medicine for his mental health issues and joint pain.  *Id.* ¶ 52.  In September 2020, R.N. alleges that he was subjected to excessive force in Adams County after he refused to sign his deportation papers, by holding him down and "forcibly took his fingerprints."  *Id.* ¶ 98.

R.N. was eventually transferred to the ICE Staging Facility in Alexandria, Louisiana.  *Id.* ¶ 120.  While there, R.N. alleges that he was kept for prolonged periods of time in a five-point restraint.  *Id.*  Officers in this Staging Facility allegedly threw R.N. to the ground, put a knee on his neck, and tied him up in The WRAP in a manner that caused him to suffer pain.  *Id.* ¶¶ 121-22. R.N. was deported to Cameroon on October 13, 2020, leaving from the Fort Worth Alliance Airport.  *Id.* ¶¶ 90, 249.  He does not allege any excessive force occurred while on the flight back to Cameroon, but he does allege that ICE officials prevented him from removing sensitive asylum-related papers from his bags prior to departure.  *Id.* ¶¶ 193-95.

### C.    Allegations Relating to C.M.

Plaintiff C.M. arrived in the United States in July 2019 and initially spent time in detention in Arizona and Mississippi before being transferred to the Jackson Parish Correctional Center in Louisiana. *Id.* ¶ 56. C.M. alleges that, while there, medical professionals provided him with "little medical care" for his asthma and impaired hearing. *Id.* ¶¶ 58-60. Like R.N., C.M. alleges that he was forcibly fingerprinted after he refused to sign his deportation papers in the Jackson Parish facility. *Id.* ¶¶ 101-05. C.M. was transferred to the Fort Worth Alliance Airport on November 11, 2020, for his flight to Cameroon. *Id.* ¶ 125. C.M. alleges that he tripped and fell at the airport, and that ICE official dragged him across the tarmac and placed him in both five-point restraints and the WRAP, causing him extreme pain and difficulty breathing when he was kept in the WRAP on the plane for hours. *Id.* ¶¶ 126-28. C.M. alleges that he witnessed other individuals in WRAPs crying and shouting for help, but that ICE agents failed to respond to any of these pleas for help or his own. *Id.* ¶¶ 130-31. C.M. also alleges that he was denied the opportunity to remove his sensitive asylum paperwork from his bags prior to his flight. *Id.* ¶ 191.

### D.    Allegations Relating to E.U.

Plaintiff E.U. arrived in the United States in August 2018 and spent time in detention facilities in Texas, Louisiana, Alabama, Mississippi, New Jersey, and New York until December 2020. *Id.* ¶¶ 62-63. While at the Etowah Detention Center in Alabama, E.U. alleges that he was denied medical care for his coronary heart disease. *Id.* ¶ 65. In October 2020, E.U. was transferred to the LaSalle Detention Facility in Jena, Louisiana, and then ultimately to the Fort Worth Alliance Airport. *Id.* ¶ 133. Once there, the ICE officers placed E.U. in the WRAP and five-point restraints. *Id.* ¶ 135. He also alleges that ICE officials improperly placed a hood of netting over his face. *Id.* ¶ 136. Although ICE originally put him on the plane while in the WRAP, E.U. was taken off the plane before it departed. *Id.* ¶¶ 137-38. On November 13, 2020, ICE attempted to deport E.U.

again, but he was taken off the plane again. *Id.* ¶¶ 140-46. While he was on the plane, E.U. alleges that ICE again secured him in the WRAP in a manner that caused him pain. *Id.* ¶¶ 142-44. E.U. remains in the United States today and currently resides in Phoenix, Arizona. *Id.* ¶ 68.

Thus, although Plaintiffs allege that they all experienced the same improper application of the WRAP by different ICE officials in the Northern District of Texas, *see id.* ¶ 106, the bulk of Plaintiffs' claims consist of disparate factual patterns involving alleged miscount by different ICE officials at several different facilities with no nexus to this District. For example, the only other allegation among the Plaintiffs that suggests that they experienced the same allegedly tortious conduct at the hands of the same tortfeasors is that three of the four Plaintiffs (K.N.N., R.N., C.M.) experienced excessive force within the Western District of Louisiana. *See, e.g., id.* ¶¶ 93-95 (KNN alleging excessive force by ICE officials in Louisiana); *id.* ¶¶ 120-22 (substantially similar allegations by R.N.); *id.* ¶¶ 101-05 (substantially similar allegations by C.M.).

### E. Other Allegations

Plaintiffs also allege that, in March and August 2020, Cameroonian asylum seekers held in Pine Prairie, Louisiana engaged in hunger strikes. *Id.* ¶ 72. Specifically, eight Cameroonian men reported that ICE offices within that facility had subjected them to beatings and other physical abuse. *Id.* ¶ 74. The Complaint, however, does not allege that any of the named Plaintiffs were among the eight men subjected to this alleged mistreatment. Moreover, the Complaint alleges that six asylum seekers in the Jackson Parish Correctional Center in Louisiana were subjected to actual and threatened physical abuse "related to signing deportation documents." *Id.* ¶ 77. C.M. is alleged to have been among these six asylum seekers, but the Complaint does not indicate that KNN, RM, or E.U. were subjected to any of this alleged abuse, either. The Complaint alleges that the hunger strike and subsequent alleged mistreatment received considerable attention due to complaints by both human rights organizations and politicians. *Id.* ¶¶ 76, 79-82. The Complaint,

however, neither asserts a claim seeking review of the Plaintiffs' asylum claims, nor otherwise allege that Plaintiffs KNN, R.N., or C.M. were improperly deported despite qualifying for asylum. *See generally* Compl.

The Complaint alleges a commonality among all four Plaintiffs' claims by alleging that the Department and ICE were on notice about the improper use of the WRAP in violation of department regulations.  Plaintiffs allege that ICE official violated ICE's Use of Force and Restraints Policy by (1) failing to attempt to secure Plaintiffs' willing cooperation before they "violently restrained [P]laintiffs with The WRAP", (2) using the WRAP on Plaintiffs when they did not pose a risk of harm to themselves or others, (3) keeping Plaintiffs in the WRAP for unnecessary lengths of time, (4) using the WRAP in a manner that "caused physical pain or discomfort[,]" (5) applying the WRAP in a manner that obstructed Plaintiffs' breathing, and (6) failing to conduct a medical examination before using the WRAP on Plaintiffs with known medical issues.  *Id.* ¶¶ 160-68.  As discussed above, all the alleged misuse of the WRAP as it relates to Plaintiffs occurred within the Northern District of Texas.

Plaintiffs allege a commonality between their claims and experiences of other detainees who allegedly experienced excessive force at the hands of ICE officials.  For example, Plaintiffs cite an incident of excessive use of force in Etowah Detention Center in Alabama, involving the tasing of an unconscious detainee.  *Id.* ¶ 176.  Plaintiffs also allege an incident involving improper restraints on a deportation flight originating out of Texas in 2018.  *Id.* ¶ 182.  The Complaint identifies other examples of alleged excessive force (*id.* ¶¶ 175-84), yet not one of the examples involves alleged misconduct occurring in this District.

## II.    <u>Plaintiffs' Exhaustion of Administrative Remedies</u>

Plaintiffs allege that they each submitted "administrative claims" to the Department and ICE on July 29, 2022.  *Id.* ¶ 20.  In marked contrast with the sprawling picture painted by the

Complaint, Plaintiffs' administrative claims are far narrower in their discussions of the alleged misconduct by the Department and ICE officials and focused solely on the "extreme suffering, severe pain and distress, and other harms inflicted" that the Plaintiffs allege they experienced "as a result of the inhumane use of 'The WRAP' by [ICE] before a mass deportation flight to Cameroon" on October 13, 2020, and November 11, 2020. Ex. 1, KNN SF-95 at 1; Ex. 2, R.N. SF-95 at 1; Ex. 3, C.M. SF-95 at 1; Ex. 4, E.U. SF-95 at 1. For example, KNN's SF-95 repeatedly references the alleged misconduct that occurred in Texas, but his administrative claim does not contain any details about misconduct he allegedly experienced in Louisiana or any other ICE detention facility. Ex. 1, KNN SF-95 at 6-8. R.N.'s SF-95 likewise confined his complaint that ICE used the WRAP on him at the Staging Facility and on the plane to Texas; his SF-95 does not present any claim regarding the other facts that R.N. has alleged in the Complaint. Ex. 2, R.N. SF-95 at 6-8. C.M., meanwhile, described the basis of his claim that he was dragged across the tarmac in Texas before placing in the WRAP—but again, did not reference any other basis for a claim that he references in the Complaint in this case. Ex. 3, C.M. SF-95 at 6-8. Finally, E.U.'s SF-95 exclusively focuses on the use of the WRAP prior to and during the two deportation flights that he was initially included on but removed from on both occasions, and does not include any allegations regarding medical neglect that occurred in Alabama. Ex. 4, E.U. SF-95 at 6-8. Most significantly, these for Plaintiff's respective SF-95's failed to mention a single alleged tortious conduct occurring in this District. *See* Exs. 1-4.

On March 20, 2023, the Department and ICE denied KNN, C.M., and R.N.'s administrative claims. *Id.* ¶ 21. The agencies denied E.U.'s claim on March 29, 2023.

## III.    **The Instant Complaint**

Plaintiffs filed suit on September 19, 2023. Compl. The Complaint contains eight separate causes of action. Count I is a claim against the United States pursuant to the Federal Tort Claim

Act ("FTCA") for abuse of process under Louisiana, Texas, Mississippi, Alabama, Florida, and District of Columbia law. *Id.* ¶¶ 213-17. Count II is an FTCA claim for negligent supervision under Louisiana, Texas, Mississippi, Alabama, and District of Columbia law. *Id.* ¶¶ 218-24. Count III is an FTCA claim for negligence under Louisiana, Texas, Mississippi, Alabama, and Florida law. *Id.* ¶¶ 219-31. Count IV is an FTCA claim for battery under Louisiana, Texas, Mississippi, and Alabama law. *Id.* ¶¶ 232-36. Count V is an FTCA claim for assault under Louisiana, Texas, Mississippi, and Alabama law. *Id.* ¶¶ 237-41. Count VI is an FTCA claim for intentional infliction of emotional distress under Louisiana, Texas, Mississippi, Alabama, Florida, and District of Columbia law. *Id.* ¶¶ 242-46. Count VII is a claim under the Administrative Procedure Act ("APA") and the *Accardi* doctrine (*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)) that alleges that the Department and ICE failed to comply with their own regulations for maintaining the confidentiality of asylum application materials. *Id.* ¶¶ 247-53. Finally, Count VIII is an APA claim against the Department and ICE alleging that it failed to abide by its own standards for the use of force.

## LEGAL STANDARDS

### I.    <u>Rule 12(b)(1)</u>

Rule 12(b)(1) requires dismissal of claims where the Court "lack[s] jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "Rule 12(b)(1) presents a threshold challenge to the Court's jurisdiction . . . [and] the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "A federal court presumptively lacks jurisdiction in a proceeding until a party demonstrates that jurisdiction exists." *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 n.9 (D.C. Cir. 1984); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("[I]t is presumed that a cause lies outside [the federal

courts'] limited jurisdiction.").  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

A court may resolve a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) in two ways:  a facial challenge or a factual challenge.  In a facial challenge, the court may decide the motion based solely on the factual allegations in the Complaint.  *Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 20 (D.D.C. 2003) ("A facial challenge attacks the factual allegations of the complaint that are contained on the face of the complaint.") (internal quotations and citations omitted).  In contrast, to determine the existence of jurisdiction in a factual challenge, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  *See Jerome Stevens Pharmacy, Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (Noting that, with respect to a factual challenge, the district court may consider materials outside of the pleadings to determine whether it has subject matter jurisdiction over the claims); *Herbert*, 974 F.2d at 197 (same).

## II.    <u>Rule 12(b)(3)</u>

Under Rule 12(b)(3), "a defendant may, at the lawsuit's outset, test whether the plaintiff 'has brought the case in a venue that the law deems appropriate.'"  *Black v. City of Newark*, 535 F. Supp. 2d 163, 166 (D.D.C. 2008) (citing *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006)).  "Similarly, 28 U.S.C. § 1406(a) requires the Court to dismiss, or if it be in the interest of justice, transfer, a case filed . . . in the wrong division or district."  *Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 414 (D.D.C. 2020) (internal quotation marks omitted), *aff'd*, No. 20-5103, 2021 WL 2525679 (D.C. Cir. June 2, 2021).  "Together, [s]ection 1406(a) and Rule 12(b)(3) allow dismissal only when venue is wrong or improper."  *Id.* (internal quotation marks omitted).  "Whether venue is wrong or improper depends exclusively on whether the court in which

the case was brought satisfies the requirements of federal venue laws[.]" *Id.* (internal quotation marks omitted).

The plaintiff bears the burden of proving that venue is proper. *See Myers v. Holiday Inns, Inc.*, 915 F. Supp. 2d 136, 144 (D.D.C. 2013). "[Rule] 12(b)(3) instructs the court to dismiss or transfer a case if venue is improper or inconvenient in the plaintiff's chosen forum." *Hamilton v. Paulson*, No. 07-1365 (RBW), 2008 WL 4531781, at *2 (D.D.C. Oct. 10, 2008) (quoting *Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008)). "In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Sanchez-Mercedes*, 453 F. Supp. 3d at 414. "'The court need not, however, accept the plaintiff's legal conclusions as true, and may consider material outside of the pleadings.'" *Id.*

### III.   Rule 12(b)(6)

A motion made under Rule 12(b)(6) tests whether a complaint has successfully "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While detailed factual allegations are not necessary to withstand a Rule 12(b)(6) challenge, a plaintiff must nonetheless provide "more than labels or conclusions" or "a formulaic" recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible only when a plaintiff pleads factual content that enables the Court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

While the Court must assume that any "well-pleaded factual allegations" in a complaint are accurate, conclusory allegations "are not entitled to the assumption of truth." *Id.* at 679. Further, the Court "need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint. Moreover, the court is not bound to accept as true a legal conclusion couched as a factual allegation." *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 27 (D.D.C. 2013) (internal quotation marks and citations omitted). A complaint that "pleads facts that are merely consistent with a defendant's liability, [ ] stops short of the line between possibility and plausibility of entitlement to relief," and is insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 55, 557) (internal quotation marks omitted). "In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice." *Haines v. Gen. Pension Plan of Int'l Union of Operating Eng'rs*, 965 F. Supp. 2d 119, 123 (D.D.C. 2013) (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotation marks and citation omitted)).

## ARGUMENT

### I.   The Court Should Transfer This Action.

A case may be transferred to any district where venue is proper "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 356 (D.D.C. 2014) (internal quotation marks omitted). "Thus, transfer . . . must . . . be justified by particular circumstances that render the transferor forum inappropriate by reference to the considerations specified in that

statute." *Id.* (internal quotation marks omitted). "The movant bears the burden of persuasion that transfer of an action is proper." *Id.* Importantly, "[c]ourts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).

Similarly, when a plaintiff files an action in the wrong district, 28 U.S.C. § 1406(a) directs courts to "dismiss, or if it be in the interest of justice, transfer such case" to the proper venue. 28 U.S.C. § 1406(a). Generally, the "interest of justice" requires courts to transfer cases to the appropriate judicial district, rather than dismiss them. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962); *James v. Booz-Allen*, 227 F. Supp. 2d 16, 20 (D.D.C. 2002).

This matter bears striking resemblance to *Spotts v. Untied States*, 562 F. Supp. 2d 46 (D.D.C. 2008). In *Spotts*, the plaintiffs brought multiple FTCA claims in this District for, among other torts, negligence, deliberate indifference, and intentional infliction of emotional distress. *Id.* at 51. The plaintiffs challenged the Bureau of Prison's decision not to relocate inmates to different prisons before the arrival of Hurricane Rita in 2005. *Id.* at 50. The government moved to transfer the case to the Eastern District of Texas, where the inmates were housed, but the plaintiffs argued that venue was proper in the District of Columbia because the "acts or omissions complained of occurred at the BOP's Central Office in Washington, D.C." *Id.* at 53. Much like the Plaintiffs in the present matter, the plaintiffs in *Spotts* argued that "the decisions to keep them at USP Beaumont during Hurricane Rita and regarding their care after the hurricane occurred at the Central Office." *Id.* The Court agreed with the government and stressed that the "mere involvement on the part of federal agencies who are located in Washington, D.C. is not determinative" and explained that the

12

plaintiffs could not "establish that any of the acts giving rise to their tort claims occurred in the District of Columbia, let alone that sufficient activities of that type occurred here." *Id.* at 55 (citations omitted).

Much like the case in *Spotts*, this matter presents a controversy with no meaningful connection to the District of Columbia whatsoever. As such, whether analyzed under section 1404 or 1406, the Court should transfer this case to the Northern District of Texas where "the act[s] or omission[s] complained of occurred" that gave rise to Plaintiffs' FTCA claims. 28 U.S.C. § 1402(b).

**A.    This Case Could Have Been Brought in the Northern District of Texas.**

"The first step in resolving a motion for transfer of venue under § 1404(a) is to determine whether the proposed transferee district is one where the action 'might have been brought.'" *Ctr. for Env't Sci.*, 75 F. Supp. 3d at 356. Here, the FTCA contains a specific venue provision that dictates that venue is proper only in "the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Here, as discussed above, Plaintiffs allege that they were all subjected to tortious conduct in the Northern District of Texas. Compl. ¶ 106. *Id.* ¶¶ 93-95, 101-05, 120-22. Moreover, in each of their SF-95s, Plaintiffs assert conduct that occurred in the Northern District of Texas as the bases for their respective claims. Ex. 1, KNN SF-95; Ex. 2, R.N. SF-95; Ex. 3, C.M. SF-95; Ex. 4, E.U. SF-95. Plaintiffs, therefore, could have brought their FTCA claims in the Northern District of Texas.

Moreover, "[i]n actions raising a federal question by naming as a defendant a federal agency or United States official in his or her official capacity, venue is proper in any judicial district where (1) a defendant in the action resides; (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated; or (3) a plaintiff resides if no real property is involved in the action." *Id.* (quoting

28 U.S.C. § 1391(e)(1)) (internal quotation marks omitted).  Here, for similar reasons, a substantial part of the events or omissions giving rise to Plaintiffs' FTCA claims occurred in the Northern District of Texas.  Compl. ¶¶ 253 (alleging that the Department and ICE officials violated their own regulations regarding confidentiality when they failed to protect Plaintiffs by deporting them from Texas before Plaintiffs could secure their asylum papers); 255 (alleging that the Department and ICE officials violated their own regulations regarding unnecessary force during the deportation flights).  Accordingly, all of the claims in this case "might have been brought" in the Northern District of Texas.

**B.**    **The Relevant Factors Support Transferring this Case to the Northern District of Texas.**

After resolving the threshold inquiry, the Court must turn to the core of the matter, namely whether the case is more conveniently handled in the Northern District of Texas rather than this District.  This inquiry requires the Court to "weigh the public and private interests."  *McAfee LLC v. U.S. Citizenship & Immigr. Servs.*, Civ. A. No. 19-2981 (DLF), 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019).   Here, the private and public interest factors significantly favor transferring this case.

1.    Private Interest Factors

In weighing transfer, "the Court considers the following private interest factors:  (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties, (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof."  *Bourdon v. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 305 (D.D.C. 2017).

a.      *The Parties' Chosen Forums, the Locus of the Claims, and the Convenience of the Parties*

Plaintiffs' choice of forum is afforded minimal weight because the District of Columbia is not Plaintiffs' home forum and the District of Columbia has no ties to this case.  *See, e.g., id.* ("Although the plaintiff's choice of forum is ordinarily entitled to deference, that choice is conferred considerably less deference when it is not the plaintiff's home forum, [and] has few factual ties to the case at hand"); *Pasem v. United States Citizenship & Immigr. Servs.*, Civ. A. No. 20-344 (CRC), 2020 WL 2514749, at *4 (D.D.C. May 15, 2020) (concluding that deference to a plaintiff's choice of forum "'is minimized when the forum chosen is not the plaintiff's home forum'") (quoting *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996)).  Here, Plaintiffs do not reside in this District and do not plausibly allege that any relevant factual events occurred here.   In such circumstances, "[t]his factor . . . provides little if any support for maintaining venue in the District of Columbia."  *Bourdon*, 235 F. Supp. 3d at 305; *see also, e.g., Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 333 (D.D.C. 2020) ("deference to [plaintiff's] choice is limited because [p]laintiff is not a resident of the District of Columbia and this action lacks meaningful ties to the District of Columbia"); *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 81 (D.D.C. 2009) (plaintiff's "choice of this district as a forum commands diminished deference" where "the claim involves identifiable relevant events occurring in the transferee district and virtually none in this district").

Rather, the private interest factors that are "of predominant importance" are those demonstrating that a plaintiff's claims arose in another District.  *Bourdon*, 235 F. Supp. 3d at 305; *see also, e.g., Wolfram Alpha*, 490 F. Supp. 3d at 333 ("The location of activities giving rise to the action weighs heavily in favor of transfer").  Here, Defendants seek to transfer this action to the Northern District of Texas because the alleged tortious misconduct common among all of

Plaintiffs' claims occurred there.  Plaintiffs respectively alleged that they were subjected to abuse of process, negligent supervision, negligence, battery, assault, and intentional infliction of emotional distress when they were allegedly subjected to unlawful restraint in the WRAP in the Northern District of Texas.  Indeed, materials cited in Plaintiffs' Complaint concedes that the acts or omissions underlying their claims truly belong in Texas.  Compl. ¶ 173 n.49 (citing a letter signed by Texas A&M School of Law Legal Clinic—where certain counsel of record for Plaintiffs work—that states that the conduct underling this Complaint "occurred in Texas and Louisiana and also violate state criminal and tort laws that prohibit assault, battery, aggravated assault, unlawful restraint, false imprisonment, intentional infliction of emotional distress, and/or negligence", but not in this District).

b.    *Remaining Private Interest Factors.*

The remaining private interest factors are neutral or favor transfer.  As the *McAfee* Court explained for "claims [that] arose primarily in the Central District [of California,]" that "District likely will be more convenient for potential witnesses and evidence."  *McAfee*, 2019 WL 6051559, at *2.  Here, all relevant evidence regarding the alleged conduct of ICE employees is located in the Northern District of Texas.  The pertinent ICE facilities and personnel at issue are also located there.  *Wolfram Alpha*, 490 F. Supp. 3d at 333 ("When claims arise within a geographic district, that district is more likely to be convenient for potential witnesses and more likely to house evidence.").

The Government notes that there is some authority within this District for the proposition that "[i]n a case involving review of an agency action, the location of witnesses is not a significant factor, but the location of the administrative record, however, carries some weight.  *Aftab*, 597 F. Supp. 2d at 83 (cleaned up).  The Government respectfully submits that *Aftab* is readily distinguishable from the instant case, notwithstanding the face of the Complaint suggesting that

the case may involve an administrative record, because *Aftab* did not include a claim under the FTCA subject to that statute's specific venue provision. *See Polidi v. Boente,* Civ. A. No. 21-2875 (FYP), 2022 WL 3594594, at *3-4 (D.D.C. July 18, 2022) (determining that the plaintiffs' claims under the FTCA were not filed in the proper venue, and transferring the FTCA claims and the APA claims to the appropriate venue notwithstanding the fact that "the United States may often be appropriately sued under the APA in the District of Columbia," because "the mere naming of the government as a defendant is not determinative of venue"), *appeal dismissed*, No. 22-5223, 2023 WL 5500662 (D.C. Cir. Mar. 22, 2023).

At bottom, "where, as here, the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing" the handling of detention and deportation of unsuccessful asylum applicants, "venue is not appropriate in the District of Columbia." *Bourdon*, 235 F. Supp. 3d at 307 (internal quotation marks omitted; alterations in original). Accordingly, the private interest factors in this case weigh in favor of transfer.

### 2.    Public Interest Factors

There are three public interest factors that the Court must also consider in assessing a request to transfer: "(1) the transferee's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Bourdon*, 235 F. Supp. 3d at 308 (quotation marks omitted). Here, each such factor is either neutral or weighs in favor of transfer.

In cases like this one, "[t]he interest in deciding local controversies at home is the public interest factor of most importance[.]" *Id.*; *see also, e.g., Wolfram Alpha*, 490 F. Supp. 3d at 338-39 ("perhaps most important amongst the public factors, the local interest in deciding local

controversies at home factor weighs in favor of transfer").  To determine whether the case presents a local controversy, courts "consider a wide variety of factors, including:  where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy[;] . . . and whether there was personal involvement by a District of Columbia official." *Bourdon*, 235 F. Supp. 3d at 308.

As discussed herein, this matter presents a local controversy that should be decided by the Northern District of Texas.  This public interest factor, which the Court explained is "most importan[t]," *Bourdon*, 235 F. Supp. 3d at 308, weighs heavily in favor of transfer.  Plaintiffs' Complaint mainly focuses on the alleged unlawful use of the WRAP by ICE officials within the Northern District of Texas on flights in and out of that judicial district.  Conversely, and critically, neither the Complaint nor Plaintiffs' respective SF-95 claims plausibly allege any misconduct in this District.  *See* Exs. 1–4.  Plaintiffs' allegations thus present a quintessential local controversy—allegations of tortious misconduct within the Northern District of Texas, and wholly outside this District.

Moreover, the Northern District of Texas will be more acquainted with applying Texas state law pursuant to which Plaintiffs have brought six tort claims,[1] and there is no reason to suspect that any federal district court is unfamiliar with federal law governing APA claims.  *See W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 101 (D.D.C. 2013) ("Judges in both districts are presumed to be equally familiar with the federal laws governing this dispute, and thus this factor is not germane[.]").  Because Plaintiffs pursue federal claims, including claims the APA and

---

[1]     Plaintiffs have asserted six torts under Texas law, versus only three under District of Columbia law.  For the reasons discussed below, however, Plaintiffs fail to state legally cognizable and plausible claims under District of Columbia law predicated on any conduct alleged to have occurred in this District.

*Accardi* doctrine, requiring interpretation of federal law, "[t]he transferee district is presumed to be equally familiar with the federal laws governing [the plaintiff's] claims." *Wolfram Alpha*, 490 F. Supp. 3d at 334 (alterations in original; quotation marks omitted). This factor thus weighs in favor of transfer—or at worst is neutral with respect to transfer.

Lastly, there can be no dispute that each District (this District and the Northern District of Texas) faces congested dockets. *See* U.S. District Court—Caseload Statistics Data Tables, *available at* https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables (latest Table C-5, Median Time from Filing to Disposition of Civil Cases by Action Taken) (last visited Feb. 15, 2024). Moreover, "[t]hese statistics are not perfect indicators of court congestion as they may be influenced by additional factors" and "[d]epending on which metric a Court chooses to assess relative congestion, the weighing of this factor [often] points in different directions." *Wolfram Alpha*, 490 F. Supp. 3d at 336-37. Accordingly, this factor is neutral or, at best, only slightly moves the needle one way or another. *See id.*

At bottom, given the local nature of this controversy, this Court should transfer the case to the Northern District of Texas.

## II.    If Not Transferred, Plaintiffs' Claims Should Be Dismissed for Several Reasons.

Plaintiffs' claims are also subject to dismissal for improper venue. That is, Plaintiffs' Complaint contains no factual allegations that make plausible the FTCA claims asserted against Defendants based on conduct that allegedly occurred in this District. Specifically, Plaintiffs do not allege that any act or omission that gave rise to their tort claims occurred within this District. As such, whether this failure is viewed as a direct defect in venue, or renders the claims against the Secretary and the Acting Director susceptible to being dismissed for either lacking subject matter jurisdiction or failing to state a claim, the result is the same. Venue for Plaintiffs' action is not properly found in this District.

19

As an initial matter, were the Court to transfer this action under Section 1404, the Court need not consider Defendants' motion to dismiss.  Indeed, confronted with both a motion to transfer and a motion dismiss, the Court has routinely denied without prejudice and with leave to refile the motion to dismiss when granting the motion to transfer.  *See, e.g., Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 16 (D.D.C. 2009) ("In light of the transfer, the court does not address the defendants' motion to dismiss.") (citing *Abusadeh v. Chertoff*, Civ. A. No. 06-2014 (CKK), 2007 WL 2111036, at \*1 (D.D.C. July 23, 2007) ("the Court shall not address the substance of Defendants' motion to dismiss but shall deny that motion without prejudice so that Defendants may refile it, if appropriate, upon transfer")).  This is especially true here when Defendants' motion to dismiss raises arguments concerning venue.[2]  That said, dismissal of much of Plaintiffs' Complaint—including every claim predicated on conduct occurring within this District—would plainly be warranted as discussed below.

### A.    Venue Is Improper Because Plaintiffs Plead No Plausible, Cognizable Claims Predicated on D.C.-Based Actions or Omissions by Defendants.

As noted above, this jurisdiction has long recognized that a litigant cannot name high-ranking officials residing here to manufacture venue in this District.  *See Cameron*, 983 F.2d at 256.  Indeed, the D.C. Circuit has expressly cautioned "[b]y naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere." *Id.* The Circuit's longstanding holding of *Cameron* has led the Court to find venue as lacking where the complaint merely rests venue on a "bare assumption that policy decisions made in Washington might have affected" the matter. *Id.* at 258.

---

[2]    For this reason, Defendants have drafted their Proposed Order as one granting Defendants' motion to transfer this action to the Northern District of Texas and denying as moot, without prejudice, and with leave to refile in the transferee court a subsequent Rule 12 motion as appropriate.

*Cameron*'s instruction is particularly important here when examining the substance of Plaintiffs' claims.  As discussed above, the FTCA's venue provision permits Plaintiffs only to bring those claims in "the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."  28 U.S.C. § 1402(b); *Polidi*, 2022 WL 3594594, at *3 (finding that venue is improper where both the plaintiff resided and the acts or omissions that gave rise to the claims occurred outside the District).  Plaintiffs' lengthy Complaint details an array of alleged misconduct occurring wholly outside this District.  For example, all four Plaintiffs were allegedly subjected to unlawful restraint in the WRAP in the Northern District of Texas.  Three of the Plaintiffs were subjected to allegedly excessive force in the Western District of Louisiana.  Other tortious conduct relating the medical neglect allegedly occurred in Alabama, Mississippi, and Florida.  The substance of Plaintiffs' torts—i.e., where the alleged "act[s] or omission[s] complained of occurred," 28 U.S.C. § 1402(b)—all took place elsewhere.

By contrast, Plaintiffs' Complaint is devoid of any non-conclusory acts or omissions that allegedly occurred in this District for purposes of the FTCA's venue provision.  Plaintiffs do not—because they cannot—allege that any application of the WRAP occurred in this District.  They plainly allege that occurred in the Northern District of Texas.  Nor do Plaintiffs allege that any of the allegedly excessive force or medical neglect occurred within this District; rather, the Complaint makes plain that all that conduct occurred in the Northern District of Texas, the Western District of Louisiana, and other states.  And, although Plaintiffs conclude that officials within this District committed an abuse of process as to Plaintiffs, harmed Plaintiffs through negligent supervision, and committed an intentional infliction of emotional distress, those are merely legal conclusions not entitled to any deference by this Court.  Instead, the Complaint is devoid of any specific factual

allegations that they may proceed on legally cognizable and plausible tort claims predicated on conduct that occurred within this District.  *See infra* Arg. § II.C.

Moreover, Plaintiffs cannot avail themselves of the doctrine of pendent venue to save their improper FTCA claims by pleading APA claims.  *See also infra* Arg. § II.D.  As a preliminary matter, Plaintiffs may not maintain their *Accardi* doctrine claims in this District, as those claims are premised on the Department and ICE officials failing to comply with regulations and policies through acts or omissions that all occurred outside of this District.  The Complaint makes plain, for example, that any alleged failure to comply with the Department or ICE regulations regarding the confidentiality of Plaintiffs' asylum papers occurred in the Northern District of Texas.  Compl. ¶¶ 115-16, 189, 191, 193-95.  Likewise, all alleged violations of regulations governing the use of force occurred in the Northern District of Texas and elsewhere outside of this District.  *Id.* ¶¶ 160-68 (allegations regarding the use of the WRAP); *see also id.* ¶¶ 93-95, 101-05, 120-22 (allegations regarding allegedly excessive use of force in detention facilities).  The substance of Plaintiffs' *Accardi* doctrine claims, therefore, occurred elsewhere and not in this District.

In any event, courts within this District have consistently declined to apply the doctrine of pendent venue to keep here FTCA claims that had been filed in an improper venue.  For example, the D.C. Circuit affirmed dismissal of an FTCA claim on improper venue grounds in *Reuber v. United States*, 750 F.2d 1039 (D.C. Cir. 1984), *abrogated on other grounds by Kauffman v. Anglo-Am. Sch. of Sofia*, 28 F.3d 1223, 1226 (D.C. Cir. 1994).  In *Reuber*, the district court dismissed the plaintiff's FTCA claim because the plaintiff's tort claim had occurred in Maryland and not the District of Columbia.  *Reuber*, 750 F.2d at 1046.  The D.C. Circuit affirmed by noting that "the United States can be held liable under the FTCA only for the tortious acts of its employees, *see* 28 U.S.C. § 1346(b), and [plaintiff] can point to no act in the District by any government employee

that caused him any tortious injury." *Id.* at 1047.  The D.C. Circuit also rejected the plaintiff's attempt to keep the FTCA claim in the District of Columbia through pendant jurisdiction because of the "distinct issues of proof" for the Privacy Act claim that was proper in the District, and because "the convenience and fairness of allowing the FTCA claim to proceed in federal court here, must be assessed in light of the general rule that, when the United States waives sovereign immunity, it may choose the conditions under which a suit against it is to proceed" and had done so by limiting venue through section 1402(b). *Id.* at 1048.  This latter point, the D.C. Circuit held, "created a strong negative presumption against courts finding discretionary pendent venue elsewhere." *Id.* at 1049.

Accordingly, courts within this District have cured the venue defect for a plaintiff's FTCA claim by transferring the case to a proper venue under section 1402(b), rather than applying the doctrine of pendent venue to keep the case here. *See*, *e.g.*, *Attkisson v. Holder*, 241 F. Supp. 3d 207, 214-15 (D.D.C. 2017) (transferring the entire case to the proper venue under the FTCA, notwithstanding the fact that the non-FTCA claims were properly venued within the District of Columbia, "'to ensure that the claims are all heard together in the interest of preserving judicial and party resources.'" (quoting *Yuanxing Liu v. Lynch*, Civ. A. No. 14-1516 (APM), 2015 WL 9281580, at *3 (D.D.C. Dec. 8, 2015)); *Polidi*, 2022 WL 3594594, at *3-4 (transferring properly venued APA claims out of the District after determining that the FTCA claims were brought in an improper venue); *see also Coltrane v. Lappin*, 885 F. Supp. 2d 228, 236–37 (D.D.C. 2012) (observing that it is "common in this Circuit" to transfer the entirety of the case when some but not all claims are improperly venued here).

Finally, even if this Court were to reach the issue and determine that Plaintiffs did in fact plead legally cognizable and plausible tort claims predicated on D.C.-based conduct, Defendants

respectfully submit that this District is nonetheless an inconvenient forum for Plaintiffs to litigate because only a fraction of the case would have been found to occurred here in stark contrast to the overwhelming majority of factual allegations supporting Plaintiffs claims that have occurred in the Northern District of Texas.  Given that it would be very inconvenient to litigate in this District under these circumstances, especially compared to the relative convenience of litigating in the Northern District of Texas, this Court could nonetheless transfer to the Northern District of Texas pursuant to 28 U.S. Code § 1404 to the more convenient venue.  As recognized by the Supreme Court, "the purpose of [§ 1404(a)] is to prevent waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26, 27 (1960)); *see id*. at 622 ("'The idea behind § 1404(a) is that where a 'civil action to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court.'") (quoting *Cont'l Grain Co.*, 364 U.S. at 26).  Accordingly, the Court should alternatively transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).  *See Spotts*, 562 F. Supp. 2d at 49 (granting the government's motion to transfer to the Eastern District of Texas because it was more convenient to litigate FTCA claims there).

### B.    Plaintiffs Have Failed to Exhaust Certain Administrative Remedies by Failing to Present Them to the Department and ICE Pre-Complaint

The FTCA mandates pre-lawsuit exhaustion in order to effect a waiver of sovereign immunity. *Benoit v. Dep't of Agric.*, 608 F.3d 17, 20 (D.C. Cir. 2010) (citations omitted); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").  Claimants exhaust their

administrative remedies by filing an administrative FTCA claim within two years after accrual of the claim and then filing a complaint in district court within six months after the agency denies the claim. *See* 28 U.S.C. § 2401(b); *Schuler v. United States,* 628 F.2d 199, 201-02 (D.C. Cir. 1980); *Bryant v. Carlson,* 652 F. Supp. 1286, 1287 (D.D.C. 1987).  Courts must dismiss tort claims against the United States when plaintiffs fail to comply with the administrative claim requirement.  *See, e.g., McNeil,* 508 U.S. at 110-11; *Mac'Avoy v. Smithsonian Inst.,* 757 F. Supp. 60, 68-69 (D.D.C. 1991); *Liles v. United States*, 638 F. Supp. 963, 966-67 (D.D.C. 1986).

To exhaust administrative remedies, Plaintiffs had to first file a "written statement sufficiently describing the injury to enable the agency to begin its own investigation, and . . . a sum-certain damages claim" and have their claims finally denied in writing.  *Hoffman v. District of Columbia*, 643 F. Supp. 2d 132 (D.D.C. 2009) (omission in original) (quoting *GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C. Cir. 1987)); *see also* 28 U.S.C. § 2675(a).  Here, however, Plaintiffs only raised administrative claims regarding the use of the WRAP, by actors solely located outside of this District.  This failed to put Defendants on notice regarding the nature of Plaintiffs' other claims and permit them to investigate claims unrelated to the use of the WRAP so that they may first have the opportunity to remedy the issues before being haled into court.  As the D.C. Circuit explained in other contexts, exhaustion is necessary "so that [an] agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review."  *Oglesby v. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990); *see also Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) ("The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." (cleaned up)); *Hoeller v. Soc. Sec. Admin.*, 670 F. App'x

413, 414 (7th Cir. 2016) ("[E]xhaustion must be completed before initiating suit in order to realize the goal of allowing administrative remedies to relieve the burden of litigation on the courts."); *Taylor v. Appleton*, 30 F.3d 1365, 1369 (11th Cir. 1994) ("Allowing a FOIA requester to proceed immediately to court to challenge an agency's initial response would cut off the agency's power to correct or rethink initial misjudgments or errors.").  More fundamentally, the FTCA requires exhaustion of claims in order to effect the waiver of sovereign immunity.  *McNeil*, 508 U.S. at 110-11, 113.

But because Plaintiffs did not present Defendants with an administrative claim regarding any conduct other than those associated with the use of the WRAP, Plaintiffs have failed to exhaust administrative remedies as to their other tort claims in this action.  Specifically, K.N.N. failed to raise administratively any claim regarding inadequate medical treatment in unspecified ICE facilities outside this District, being held naked in a cell in La Salle Detention facility, being provided with incorrect mailing information for his appeal to the Fifth Circuit, or being subject excessive force in Jena, Louisiana.  Compl. ¶¶ 41-43, 93-95.  R.N. failed to raise administratively any claims regarding medical neglect from his time in Florida or being subjected to isolation due to COVID-19.  *Id.* ¶¶ 44-51.  C.M. failed to raise administratively any claim regarding medical neglect or excessive force in Louisiana.  *Id.* ¶¶ 56-60, 101-05.  E.U. also failed to raise administratively any medical neglect claims from his time in Alabama.  *Id.* ¶ 65.  And, most important to this instant motion, all Plaintiffs wholly failed to raise any administrative claim predicated on conduct occurring in this District.  *See* Exs. 1–4.  Defendants have thus not waived sovereign immunity as to these claims because Plaintiffs failed to exhaust administrative remedies.

### C.    Plaintiffs' D.C.-Based Torts Fail for Several Additional Reasons

Beyond the exhaustion grounds, Plaintiffs fail to allege any cognizable tort claims based on acts or omissions that occurred in this District for several additional reasons.

*First,* Plaintiffs have not adequately pleaded that the United States has waived sovereign immunity regarding any intentional torts allegedly committed by tortfeasors in this District. The United States has not consented to be sued for intentional torts like abuse of process and intentional infliction of emotional distress unless committed by a federal law enforcement officer acting within the scope of his employment. *See* 28 U.S.C. § 2680(h). "[T]he United States is . . . immune not just for claims enumerated in 28 U.S.C. § 2680(h), but also for any 'claim arising out of' these claims." *Peter B. v. United States*, 579 F. Supp. 78, 82-83 (D.D.C. 2008) (quoting *Kugel v. United States*, 947 F. 2d 1504, 1507 (D.C. Cir. 1991)). For purposes of determining "the essential nature of the cause of action," it is necessary to look at the "government conduct that is alleged to have caused the injury[.]" *Edmonds v. United States*, 436 F. Supp. 2d 28, 35-36 (D.D.C. 2006). Unless the law enforcement proviso of section 2680(h) applies, Plaintiffs' abuse of process and intentional infliction of emotional distress claims are barred under the doctrine of sovereign immunity. *Chien v. United States*, Civ. A. No. 17-2334 (CKK), 2019 WL 4602119, at *9 (D.D.C. Sept. 23, 2019) (holding that there is no waiver of immunity with regard to claims of fraud or abuse of process); *Charles v. United States*, Civ. A. No. 21-0864 (CKK), 2022 WL 558181, at *4 (D.D.C. Feb. 24, 2022) ("As defamation and intentional infliction of emotional distress are intentional torts arising from actions for which the FTCA does not waive sovereign immunity, Plaintiff cannot maintain an FTCA action against the United States for his defamation claim or for an IIED claim.").

Here, Plaintiffs' abuse of process and intentional infliction of emotional distress claims under D.C. law against D.C.-based employees of the Government do not suggest that the allegedly tortious acts or omissions were committed by a federal law enforcement officer acting within the scope of his employment. *See* 28 U.S.C. § 2680(h). At most, Plaintiffs allege that D.C.-based high-level officers of the Department and ICE were on notice of alleged abuses of individuals in

ICE custody, yet failed to remediate those abuses, scheduled the deportation flights with a Special High Risk Charter designation and coordinated other flight logistics, responded to inquiries from members of Congress regarding the Pine Prairie hunger strike (that the Complaint does not allege any Plaintiffs joined in), and monitored press coverage.  Compl. ¶¶ 3, 24, 72, 84, 87.  None of these allegations suggest that D.C.-based government officials were carrying out investigative or law enforcement officer functions.  *Menifee v. Dep't of the Interior*, 931 F. Supp. 2d 149, 162 (D.D.C. 2013) ("Mr. Hargrave's position does not authorize him to conduct searches, seize evidence, or make arrests, meaning that he is not an investigative or law enforcement officer as defined within the relevant provision of the FTCA." (cleaned up)); *see also Cao v. United States*, 156 F. App'x. 48, 50 (9th Cir. 2005) (dismissing malicious prosecution claim because neither INS attorneys nor immigration judge involved in removal proceedings were investigative or law enforcement officers within the meaning of § 2680(h)).

*Second*, Plaintiffs cannot plead a cognizable claim of abuse of process under District of Columbia law due to a lack of judicial process here—even if this Court finds that sovereign immunity has been waived as to such a claim.  Under District of Columbia law, "[t]o establish abuse of process, a plaintiff must show 'a perversion of the judicial process and achievement of some end not anticipated in the regular prosecution of the charge.'"  *Whelan v. Abell*, 953 F.2d 663, 670 (D.C. Cir. 1992) (citing *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980)).  "[T]he D.C. Court of Appeals decided that simply initiating a legal proceeding with an ulterior motive is in and of itself insufficient to give rise to an abuse of process claim[.]"  *Page v. Comey*, 628 F. Supp. 3d 103, 132 n.20 (D.D.C. 2022) (citing  *Bown v. Hamilton*, 601 A.2d 1074, 1080 (D.C. 1992)).  Here, Plaintiffs fail to allege that any D.C.-based actor has perverted some judicial process in furtherance of ends not anticipated in the regular prosecution of the charge.  As discussed above,

at most, Plaintiffs allege that D.C.-based high-ranking officials failed to remedy known issues within ICE facilities outside this District and coordinated logistics for the departure flights. Compl. ¶¶ 3, 24, 72, 84, 87. There is no allegation that those alleged tortfeasors abused judicial process, however. Indeed, at no point did Plaintiffs allege that Plaintiffs K.N.N., RN, or C.M. were improperly deported despite qualifying for asylum. *See generally* Compl. Even if this were the case, the lack of any D.C.-based actor abusing a judicial proceeding would be fatal to such a claim. *Wagdy v. Sullivan*, Civ. A. No. 16-2164 (TJK), 2018 WL 2304785, at *3 (D.D.C. May 18, 2018) (dismissing abuse of process claim under District of Columbia law for lack of a judicial process that had been abused).

*Third*, Plaintiffs fail to allege a cognizable claim of intentional infliction of emotional distress under District of Columbia law based on D.C.-based conduct. To state a claim under District of Columbia law for intentional infliction of emotional distress, a plaintiff must show "(1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251, 255 (D.C. Cir. 2008). "Liability will not be imposed for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *District of Columbia v. Tulin*, 994 A.2d 788, 800 (D.C. 2010). "As to the first element, '[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Kotsch v. District of Columbia*, 924 A.2d 1040, 1045–46 (D.C. 2007) (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). Notably, in the context of excessive force claims, "[t]he 'extreme and outrageous' standard for intentional infliction of emotional distress is different from, and more exacting than, the 'reasonableness' standard used for evaluating claims of excessive

force." *Id.* at 1046 n.5.  Here, none of Plaintiffs' allegations against D.C.-based actors—failing to remediate known abuses, scheduling deportation flights and coordinating other flight logistics, responding to politicians' inquiries, and monitoring press coverage—constitute "extreme and outrageous" conduct under District of Columbia law.  Thus, this is an additional reason for this Court to dismiss Plaintiffs' claims of intentional infliction of emotional distress under District of Columbia law against D.C.-based actors.

*Finally*, Plaintiffs fail to allege a negligent supervision claim stemming from conduct by D.C.-based high-ranking officials.  Under District of Columbia law, the tort of negligent supervision is "derived from this standard negligence tort, [and] recognizes that an employer owes specific duties to third persons based on the conduct of its employees." *Griffin v. Acacia Life Ins. Co*., 925 A.2d 564, 575 (D.C. 2007).  Here, Plaintiffs fail to allege that any D.C.-based actor breached a duty of care owed to Plaintiffs.  The Complaint alleges that "[t]he government's employees in supervisory roles have a duty to properly supervise detention officers and to oversee their treatment of immigrants in their custody."  Compl. ¶ 220.  This alleged failure to "properly supervise detention officers" or to "oversee their treatment of immigrants in their custody" is an act or omission that occurred where the subordinate employees allegedly engaged in tortious behavior—that is, in the case of the use of the WRAP on Plaintiffs, the negligent supervision occurred within the Northern District of Texas.  *Id.* ¶ 221(c).  Moreover, the negligent supervision over ICE officers allegedly using excessive force against Plaintiffs or neglecting Plaintiffs' medical needs occurred in the detention facilities where Plaintiffs were detained, and not in the District of Columbia.  *Id.* ¶ 221(a)-(b).  This conduct all occurred outside this District.  Accordingly, Plaintiffs have failed to allege that any D.C.-based employee of the Department or ICE negligently supervised the conduct complained of in this lawsuit.

Elsewhere in the Complaint, Plaintiffs allege that "[the Department] and ICE officials in the District of Columbia directly oversaw conditions at the detention facilities[.]" *Id.* ¶ 24. This allegation, however, is no more than a legal conclusion, which are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Plaintiffs fail to allege any plausible facts—as opposed to legal conclusions—that the Department or ICE employees located in this District were directly responsible for daily supervision of the conduct occurring within ICE facilities in Texas, Louisiana, Alabama, Mississippi, or Florida. Rather, the only plausible inference is that those responsibilities would not be vested in agency headquarters hundreds or thousands of miles away but rather within the facilities themselves. *Cf. Macharia v. United States*, 238 F. Supp. 2d 13, 27 (D.D.C. 2002) (observing, in the context of applying the FTCA's foreign country exception, that the training of local guards responsible for providing security at an embassy would have occurred at the embassy itself and not in the District of Columbia), *aff'd*, 334 F.3d 61 (D.C. Cir. 2003). Plaintiffs thus fail to allege a negligent supervision claim predicated on acts or omissions that occurred within this District.

These reasons demonstrate that Plaintiffs fail to allege any cognizable claim against Defendants predicated on acts or omissions occurring within the District of Columbia. Accordingly, should this Court reach the issue of dismissal prior to analyzing Defendants' motion to transfer, Defendants respectfully request that this Court dismiss Plaintiffs' tort claims to the extent they are predicated on acts or omissions in this District.

### D.  The Adequate Remedy Bar Under the APA Forecloses Plaintiffs' *Accardi* Doctrine Claims.

Counts VII and VIII, although styled as claims under the APA and the *Accardi* doctrine, are merely recast variations of Plaintiffs' multiple tort claims. Count VII alleges APA and an

*Accardi* doctrine violations stemming from the alleged failure of the Department and ICE to comply with their own regulations for maintaining the confidentiality of asylum application materials, whereas Count VIII alleges APA and an *Accardi* doctrine violations stemming from the alleged failure to comply with the Department and ICE's use of force policies.  Regardless of the form that Plaintiffs have pleaded, the substance of these claims echo their already-pleaded FTCA claims for, *inter alia*, abuse of process, intentional infliction of emotional distress, assault, and battery.  These claims should be dismissed because Plaintiffs have an adequate remedy under law pursuant to the FTCA.

"Although the APA was enacted to 'provid[e] a broad spectrum of judicial review of agency action,' such review is only permissible if 'there is no other adequate remedy' at law." *Chaverra v. Immigr. & Customs Enf't*, Civ. A. No. 18-0289 (JEB), 2018 WL 4762259, at *3 (D.D.C. Oct. 2, 2018) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) and 5 U.S.C. § 704).  "The relevant question under the APA, then, is not whether private lawsuits against the third-party wrongdoer are as effective as an APA lawsuit against the regulating agency, but whether the private suit remedy provided by Congress is adequate."  *Garcia v. Vilsack*, 563 F.3d 519, 525 (D.C. Cir. 2009).  "[I]n determining whether an adequate remedy exists, [the D.C. Circuit] has focused on whether a statute provides an independent cause of action or an alternative review procedure."  *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005).

The alleged final agency action in this case is Defendants' purported failure to comply with their own policies.  *See* Comp. ¶¶ 242-61.  However, Plaintiffs are challenged these alleged failures under the FTCA and could have brought FTCA claims for the others in this suit, had they timely exhausted their administrative remedies.  Specifically, Plaintiffs have asserted FTCA claims

predicated on the Department and ICE's alleged failure to comply with its own regulations and policies governing the use of force. *See id.* ¶¶ 232-41. They also allege as a basis for their negligent supervision claim that supervisors' negligence led to "[t]he blatant disregard for ICE's own internal policies and regulations," including those regarding the confidentiality of Plaintiffs' asylum paperwork. *Id.* ¶¶ 203-09, 221. Because the FTCA forecloses Plaintiffs' "cause of action under the APA," *Reliable Automatic Sprinkler Co., Inc., v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003), the Court should dismiss Plaintiffs' APA claims under Rule 12(b)(6). *See Fletcher v. Dep't of Just.*, 17 F. Supp. 3d 89 (D.D.C. 2014). Accordingly, Counts VII and VIII should be dismissed because the FTCA provides them with an alternative and adequate remedy.

*    *    *

**CONCLUSION**

For all these reasons, Defendants respectfully request that this Court grant their motion and either transfer Plaintiffs' case to the Northern District of Texas, or dismiss the action.

Dated: February 20, 2024
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:          */s/ Stephen DeGenaro*
     STEPHEN DEGENARO
     D.C. Bar #1047116
     KAITLIN K. ECKROTE
     D.C. Bar #1670899
     Assistant United States Attorneys
     601 D Street, NW
     Washington, DC 20530
     (202) 252-7229 (DeGenaro)
     (202) 252-2485 (Eckrote)
     Stephen.DeGenaro@usdoj.gov
     Kaitlin Eckrote@usdoj.gov

*Attorneys for the United States of America*