# EXHIBIT B

   

April 26, 2021

**FOIA Request: ICE, DHS, EOIR, DOS**

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, D.C. 20536-5009

U.S. Department of Homeland Security
Chief Privacy Officer/Chief FOIA Officer
The Privacy Office
245 Murray Lane SW
STOP-0655
Washington, D.C. 20528-0655

Executive Office for Immigration Review
Office of General Counsel - FOIA Service Center
5107 Leesburg Pike # 1903
Falls Church, VA 22041

U.S. Department of State
Office of Information Programs and Services
A/GIS/IPS/RL
2201 C Street N.W., Suite B266
Washington, D.C. 20520-0000

**Re: Freedom of Information Act Request**

To Whom it May Concern:

    This is a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), on behalf of Project South, Southern Poverty Law Center ("SPLC"), and the Center for Constitutional Rights ("CCR") (collectively "the Requesters") to the U.S. Immigration and Customs Enforcement Agency ("ICE"), the U.S. Department of the Homeland Security ("DHS"), the U.S. Department of Justice Executive Office for Immigration Review ("EOIR"), and the U.S. Department of State ("DOS") for information regarding recent removals of Cameroonian and other migrants on what

are commonly referred to as "death flights" into areas of known violent conflicts.[1] We ask that you please direct this request to all appropriate offices, field offices, and departments within each agency, including but not limited to the EOIR's Board of Immigration Appeals ("BIA"), as well as ICE Air Operations (IAO) within the ICE Office of Enforcement and Removal Operations (ERO) and ICE's New Orleans and Atlanta Field Offices.

**Purpose of Request**

This request pertains to records and data concerning the recent increase of ICE removals of Cameroonian and other African migrants, ranging approximately from August 1, 2020, to January 19, 2021. The inquiry follows after a number of reports detailing the torture of Cameroonians and other Africans who were coerced into signing removal papers, even when a significant number of asylum seekers had pending claims before the U.S. Immigration Court. As organizations that engage in advocacy and public education on behalf of immigrant communities, Project South, SPLC, and CCR have an interest in understanding the reasons for such an increased removal of Cameroonian and other African migrants. Because the Requesters disseminate policy and educational materials to the public at no cost, information obtained from this FOIA request will better enable communities they represent as well as the general public in understanding why ICE, DHS, EOIR, and DOS have engaged in this practice and its consequential effects.

**A. Definitions**

1. *FOIA logs* mean any FOIA requests and associated administrative responses to FOIA requests.
2. *Areas of Conflict* means areas that are fragile and subject to instability such as large-scale violence, armed conflict, or the inability to manage transnational threats or other significant shocks.[2]

**B. Request for Information**

Project South, SPLC, and CCR request the following information:

*I. From U.S. Immigration and Customs Enforcement:*

---

[1] *See generally Death Flights*, Witness at the Border, https://witnessattheborder.org/ (last visited Feb. 25, 2020); U.S. Department of State, Bureau of Democracy, Human Rights and Labor, *Country Reports on Human Rights Practices for 2018, available at* https://www.state.gov/wp-content/uploads/2019/03/Cameroon-2018.pdf. (detailing conflict and human rights concerns in Cameroon).

[2] While no unified term of art for Areas of Conflict exists within the vocabulary of these federal agencies, Requesters take inspiration from an inter-agency Stabilization Assistance Review published by the U.S. Department of State, the U.S. Agency for International Development, and the U.S. Department of Defense. *A Framework For Maximizing The Effectiveness Of U.S. Government Efforts To Stabilize Conflict-affected Areas*, Stabilization Assistance Review (2018), available at https://www.state.gov/wp-content/uploads/2019/06/SAR-Final.pdf.

1. Any and all records disclosed as a result of responding to the FOIA request filed by Citizens for Responsibility and Ethics in Washington (CREW) dated October 23, 2020.
2. Any and all other FOIA logs[3] pertaining to the removal of Cameroonians between 08/01/2020-1/19/2021.
3. The number of removal flights to Cameroon between 08/01/2020 to 1/19/2021.
4. The number of Cameroonians on each removal flight between 08/01/2020-1/19/2021.
5. For each removal flight between 08/01/2020-1/19/2021, please provide the following information about each Cameroonian on the flight (in the form of a spreadsheet, with each row being a person and each column containing the requested information):
    a. Age;
    b. Gender/gender identity;
    c. Country of origin or official nationality;
    d. Duration of time spent in the U.S. prior to removal;
    e. The port of entry crossed (if applicable);
    f. The charges in their immigration court proceedings (if any);
    g. What type of application for relief (asylum, withholding of removal, etc), if any, was submitted to the U.S. Immigration Court prior to removal;
    h. For those who applied for asylum or withholding of removal due to fear of persecution or torture please provide any and all records indicating:
        i. Whether the application for relief was affirmative (submitted to USCIS) or defensive (in removal proceedings);
        ii. The credible fear interview decision (positive or negative; and if positive, whether the applicant was found to have a credible fear of persecution and/or torture);
    i. The type of case (if any) pending for each individual on the flight, including:
        i. Pending BIA appeals;
        ii. Pending BIA motions to reopen;
        iii. Pending motions to reconsider;
        iv. Pending circuit court appeals (please note which circuit); and
        v. Any stays of removal orders issued and in effect; and
    j. Whether any formal complaint was filed or received (individually or as part of a group complaint) regarding use of force or other abuses by ICE, in which the individual was named as a victim or witness.
6. Any and all records of credible fear interviews conducted between 08/01/2020-1/19/2021 which reflect:
    a. The number of interviews conducted for all persons undergoing a credible fear interview, for all Cameroonians undergoing a credible fear interview;
    b. The number of interviews passed, for all persons undergoing a credible fear interview and for all Cameroonians undergoing a credible fear interview; and
    c. The number of interviews failed, for all persons undergoing a credible fear interview and for all Cameroonians undergoing a credible fear interview.
7. Any and all records indicating the number of Cameroonians held in ICE detention, including but not limited to jails, detention centers, correctional facilities, or transitional facilities:

---

[3] Requesters define FOIA logs to mean any FOIA requests and associated administrative responses to FOIA requests. *See* Section A above.

      a. Currently; and

      b. Monthly totals of Cameroonians held in ICE detention within the jurisdiction of the ICE New Orleans Field Office and Atlanta Field Office between 08/01/2020-1/19/2021.

8. Any and all records related to the removal of Cameroonians between 08/01/2020-1/19/2021, including but not limited to those available on:
    a. ICE's Criminal History and Immigration Verification (CHIVe) System of Records;
    b. ICE's LeadTrac System of Records; and
    c. ICE's FALCON Search and Analysis.
9. ICE policies, memos, directives, or guidance relating to the removal of individuals into Areas of Conflict (as defined in Section A of this Request) in effect between 08/01/2020-1/19/2021.
10. ICE policies, memos, directives, or guidance relating to agency official communication with countries receiving removed persons utilized from 08/01/2020-1/19/2021.
11. A complete list of acceptable travel documents which ICE requires for individuals to be removed on removal flights.
12. Any and all ICE policies on retention of identity documents during the process of removal.
13. Any and all ICE policies on the distribution or sharing of identity documents of removed individuals with Cameroon.
14. ICE policies, memos, directives, or guidance relating to procedures for:
    a. obtaining signatures from detainees to authorize removal; and
    b. obtaining from receiving countries confirmation of a removed person's arrival.

*II. From U.S. Department of Homeland Security:*

1. Any and all records disclosed as a result of responding to the FOIA request filed by Citizens for Responsibility and Ethics in Washington (CREW) dated October 23, 2020.
2. Any and all other FOIA logs[4] pertaining to the removal of Cameroonians from 08/01/2020-1/19/2021.
3. The number of removal flights to Cameroon between 08/01/2020 to 1/19/2021.
4. The number of Cameroonians on each removal flight between 08/01/2020-1/19/2021.
5. For each removal flight between 08/01/2020-1/19/2021, please provide the following information about each Cameroonian on the flight (in the form of a spreadsheet, with each row being a person and each column containing the requested information):
    a. Age;
    b. Gender/gender identity;
    c. Country of origin or official nationality;
    d. Duration of time spent in the U.S. prior to removal;
    e. The port of entry crossed (if applicable);
    f. The charges in their immigration court proceedings (if any);
    g. What type of application for relief (asylum, withholding of removal, etc), if any, was submitted to the U.S. Immigration Court prior to removal;
    h. For those who had applied for asylum or withholding of removal due to fear of persecution or torture please provide any and all records indicating:

---

[4] Requesters define FOIA logs to mean any FOIA requests and associated administrative responses to FOIA requests. *See* Section A above.

    i. Whether the application for relief was affirmative (submitted to USCIS) or defensive (in removal proceedings);
    ii. The credible fear interview decision (positive or negative; and if positive, whether the applicant was found to have a credible fear of persecution and/or torture);
   i. The type of case (if any) pending for each individual on the flight, including:
    i. Pending BIA appeals;
    ii. Pending BIA motions to reopen;
    iii. Pending motions to reconsider;
    iv. Pending circuit court appeals (please note which circuit); and
    v. Any stays of removal orders issued and in effect; and
   j. Whether any formal complaint was filed or received (individually or as part of a group complaint) regarding use of force or other abuses by ICE, in which the individual was named as a victim or witness.

6. Any and all records of credible fear interviews conducted between 08/01/2020-1/19/2021 which reflect:
   a. The number of interviews conducted for all persons undergoing a credible fear interview, for all Cameroonians undergoing a credible fear interview;
   b. The number of interviews passed, for all persons undergoing a credible fear interview and for all Cameroonians undergoing a credible fear interview; and
   c. The number of interviews failed, for all persons undergoing a credible fear interview and for all Cameroonians undergoing a credible fear interview.
7. Any and all records indicating the number of Cameroonians under ICE detention, including but not limited to jails, detention centers, correctional facilities, or transitional facilities:
   a. Currently; and
   b. Monthly totals of Cameroonians held in ICE detention within the jurisdiction of the ICE New Orleans Field Office and Atlanta Field Office between 08/01/2020-1/19/2021.
8. Any and all records related to the removal of Cameroonians between 08/01/2020-1/19/2021, including but not limited to those available on:
   a. DHS's Criminal History and Immigration Verification (CHIVe) System of Records;
   b. DHS's LeadTrac System of Records; and
   c. DHS's FALCON Search and Analysis.
9. DHS policies, memos, directives, or guidance relating to removal of individuals into Areas of Conflict in effect between 08/01/2020-1/19/2021.
10. DHS policies, memos, directives, or guidance relating to agency official communication with countries receiving removed persons in effect from 08/01/2020-1/19/2021.
11. A complete list of acceptable travel documents which DHS requires for individuals to be removed on removal flights.
12. Any and all DHS policies on retention of identity documents during the process of removal.
13. Any and all DHS policies on the distribution or sharing of identity documents with Cameroon.
14. DHS policies, memos, directives, or guidance relating to procedures for:
    a. obtaining signatures from detainees to authorize removal; and
    b. obtaining from receiving countries confirmation of a removed person's arrival.

*III. From Executive Office for Immigration Review:*

1. Any and all other FOIA logs pertaining to the removal of Cameroonians from 08/01/2020-1/19/2021.
2. Any and all records from 08/01/2020-1/19/2021 related to the removal of Cameroonians including but not limited to those available on EOIR's Record and Management Information System.
3. The number of removal flights to Cameroon between 08/01/2020 to 1/19/2021.
4. The number of Cameroonians on each removal flight between 08/01/2020-1/19/2021.
5. For each removal flight between 08/01/2020-1/19/2021, please provide the following information about each Cameroonian on the flight (in the form of a spreadsheet, with each row being a person and each column containing the requested information):
    a. Age;
    b. Gender/gender identity;
    c. Country of origin or official nationality;
    d. Duration of time spent in the U.S. prior to removal;
    e. The port of entry crossed (if applicable);
    f. The charges in their immigration court proceedings (if any);
    g. What type of application for relief (asylum, withholding of removal, etc), if any, was submitted to the U.S. Immigration Court prior to removal;
    h. For those who had applied for asylum or withholding of removal due to fear of persecution or torture please provide any and all records indicating:
        i. Whether the application for relief was affirmative (submitted to USCIS) or defensive (in removal proceedings);
        ii. The credible fear interview decision (positive or negative; and if positive, whether the applicant was found to have a credible fear of persecution and/or torture);
    i. The type of case (if any) pending for each individual on the flight, including:
        i. Pending BIA appeals;
        ii. Pending BIA motions to reopen;
        iii. Pending motions to reconsider;
        iv. Pending circuit court appeals (please note which circuit); and
        v. Any stays of removal orders issued and in effect; and
    j. Whether any formal complaint was filed or received (individually or as part of a group complaint) regarding use of force or other abuses by ICE, in which the individual was named as a victim or witness.
6. Any and all records of credible fear interviews conducted between 08/01/2020-1/19/2021 which reflect:
    a. The number of interviews conducted for all persons undergoing a credible fear interview, for all Cameroonians undergoing a credible fear interview;
    b. The number of interviews passed, for all persons undergoing a credible fear interview and for all Cameroonians undergoing a credible fear interview; and
    c. The number of interviews failed, for all persons undergoing a credible fear interview and for all Cameroonians undergoing a credible fear interview.

*IV. From Board of Immigration Appeals:*

1. Any and all other FOIA logs pertaining to the removal of Cameroonians from 08/01/2020-1/19/2021.
2. Any and all records from 08/01/2020-1/19/2021 related to the removal of Cameroonians including but not limited to those available on:
    a. BIA's Decisions of the Board of Immigration Appeals; and
    b. BIA's Roster of Organizations and their Accredited Representatives Recognized by the Board of Immigration Appeals.
3. The number of removal flights to Cameroon between 08/01/2020 to 1/19/2021.
4. The number of Cameroonians on each removal flight between 08/01/2020-1/19/2021.
5. For each removal flight between 08/01/2020-1/19/2021, please provide the following information about each Cameroonian on the flight (in the form of a spreadsheet, with each row being a person and each column containing the requested information):
    a. Age;
    b. Gender/gender identity;
    c. Country of origin or official nationality;
    d. Duration of time spent in the U.S. prior to removal;
    e. The port of entry crossed (if applicable);
    f. The charges in their immigration court proceedings (if any);
    g. What type of application for relief (asylum, withholding of removal, etc), if any, was submitted to the U.S. Immigration Court prior to removal;
    h. For those who had applied for asylum or withholding of removal due to fear of persecution or torture please provide any and all records indicating:
        i. Whether the application for relief was affirmative (submitted to USCIS) or defensive (in removal proceedings);
        ii. The credible fear interview decision (positive or negative; and if positive, whether the applicant was found to have a credible fear of persecution and/or torture);
    i. The type of case (if any) pending for each individual on the flight, including:
        i. Pending BIA appeals;
        ii. Pending BIA motions to reopen;
        iii. Pending motions to reconsider;
        iv. Pending circuit court appeals (please note which circuit); and
        v. Any stays of removal orders issued and in effect; and
    j. Whether any formal complaint was filed or received (individually or as part of a group complaint) regarding use of force or other abuses by ICE, in which the individual was named as a victim or witness.
6. Any and all records of credible fear interviews conducted between 08/01/2020-1/19/2021 which reflect:
    a. The number of interviews conducted for all persons undergoing a credible fear interview, for all Cameroonians undergoing a credible fear interview;

    b. The number of interviews passed, for all persons undergoing a credible fear interview and for all Cameroonians undergoing a credible fear interview; and

    c. The number of interviews failed, for all persons undergoing a credible fear interview and for all Cameroonians undergoing a credible fear interview.

*V. From U.S. Department of State*

1. Any and all other FOIA logs pertaining to the removal of Cameroonians from 08/01/2020-1/19/2021.
2. Any and all records related to the removal of Cameroonians between 08/01/2020-1/19/21, including but not limited to those available on:
    a. DOS's Congressional Travel Records, STATE-44;
    b. DOS's Coordinator for Combatting Terrorism Records, STATE-06;
    c. DOS's Country Clearance Records, STATE-77;
    d. DOS's Intelligence and Research Records, STATE-15;
    e. DOS's Legal Case Management Records, STATE-21;
    f. DOS's Office of Freedom of Information, Privacy and Classification Review WAE Re-employed Annuitants and Contractor Records, STATE-51;
    g. DOS's Passport Records, STATE-26;
    h. DOS's Refugee Case Records, STATE-59;
    i. DOS's Security Records, STATE-36; and
    j. DOS's Visa Records, STATE-39.
3. The number of removal flights to Cameroon between 08/01/2020 to 1/19/2021.
4. The number of Cameroonians on each removal flight between 08/01/2020-1/19/2021.
5. For each removal flight between 08/01/2020-1/19/2021, please provide the following information about each Cameroonian on the flight (in the form of a spreadsheet, with each row being a person and each column containing the requested information):
    a. Age;
    b. Gender/gender identity;
    c. Country of origin or official nationality;
    d. Duration of time spent in the U.S. prior to removal;
    e. The port of entry crossed (if applicable);
    f. The charges in their immigration court proceedings (if any);
    g. What type of application for relief (asylum, withholding of removal, etc), if any, was submitted to the U.S. Immigration Court prior to removal;
    h. For those who had applied for asylum or withholding of removal due to fear of persecution or torture please provide any and all records indicating:
        i. Whether the application for relief was affirmative (submitted to USCIS) or defensive (in removal proceedings);
        ii. The credible fear interview decision (positive or negative; and if positive, whether the applicant was found to have a credible fear of persecution and/or torture);
    i. The type of case (if any) pending for each individual on the flight, including:
        i. Pending BIA appeals;
        ii. Pending BIA motions to reopen;
        iii. Pending motions to reconsider;
        iv. Pending circuit court appeals (please note which circuit); and

        v.  Any stays of removal orders issued and in effect; and
     j.  Whether any formal complaint was filed or received (individually or as part of a group complaint) regarding use of force or other abuses by ICE, in which the individual was named as a victim or witness.
6. Any and all records of credible fear interviews conducted between 08/01/2020-1/19/2021 which reflect:
     a. The number of interviews conducted for all persons undergoing a credible fear interview, for all Cameroonians undergoing a credible fear interview;
     b. The number of interviews passed, for all persons undergoing a credible fear interview and for all Cameroonians undergoing a credible fear interview; and
     c. The number of interviews failed, for all persons undergoing a credible fear interview and for all Cameroonians undergoing a credible fear interview.
7. DOS policies, memos, directives, or guidance relating to removals of individuals into Areas of Conflict utilized from 08/01/2020-1/19/2021.
8. DOS policies, memos, directives, or guidance relating to agency official communication with countries receiving removed persons utilized from 08/01/2020-1/19/2021.
9. A complete list of acceptable travel documents required for individuals to be removed.
10. Any and all DOS policies on retention of identity documents during the process of removal.
11. Any and all DOS policies on the distribution or sharing of identity documents with Cameroon.
12. DOS policies, memos, directives, or guidance relating to procedures for:
     a. obtaining signatures from detainees to authorize removal; and
     b. obtaining from receiving countries confirmation of a removed person's arrival.

**C. Format of Production**

Please search for responsive records regardless of format, medium, or physical characteristics, and including electronic records. Please provide the requested documents in the following format:

- Provided via email or on a CD, DVD, hard drive, or other hardcopy media;
- In PDF format wherever possible;
- Electronically searchable wherever possible;
- Each paper record in a separately saved file;
- "Parent-child" relationships maintained, meaning that the Requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; and
- With any other metadata preserved.

**D. Requesters**

Project South, founded as the Institute to Eliminate Poverty & Genocide in 1986, is a non-profit organization based in Atlanta. Project South's work is rooted in the legacy of the Southern Freedom Movement and has a mission of cultivating strong social movements in the South. One

of Project South's primary work areas is educating the public with know-your-rights workshops and releasing toolkits for advocacy and organizing. These and other materials are available through Project South's website, https://projectsouth.org/, which addresses the issues on which the organization works. In addition, Project South regularly issues press releases, has an active social media presence with thousands of followers, and produces periodicals that reach members with education, organizing updates, and consciousness-raising political analysis on poverty, race, global struggles, and youth realities. Project South also produces community-based reports to share knowledge, increase access to movement histories, and amplify movement victories.

The <u>Southern Poverty Law Center ("SPLC")</u> is a non-profit, public interest legal and advocacy organization specializing in civil rights and public interest litigation. SPLC is a catalyst for racial justice in the South and beyond, working in partnership with communities to dismantle white supremacy, strengthen intersectional movements, and advance the human rights of all people. SPLC's diverse issue areas include economic justice, immigrant rights, criminal justice reform, and hate & extremism. One of SPLC's primary activities is the release of frequent publications, intelligence reports, and press releases regarding all of the Center's issues. These and other materials are available through SPLC's website, https://www.splcenter.org/. SPLC staff members often serve as sources for journalists and media outlets, including on issues related to racial justice, racial discrimination, and immigrant rights. In addition, SPLC hosts a blog called Hatewatch which monitors and exposes the activities of the American radical right and has a strong social media presence with thousands of followers to communicate frequent updates on recent projects and issues of social justice.

The <u>Center for Constitutional Rights ("CCR")</u> is a non-profit, public interest legal and advocacy organization that engages in the fields of civil and international human rights. CCR's diverse issue areas include litigation and advocacy around immigration, as well as racial and ethnic profiling. One of CCR's primary activities is the publication of newsletters, know-your-rights handbooks, legal analysis of current immigration law issues, and other similar materials for public dissemination. These and other materials are available through CCR's Development, Communications, and Advocacy Departments. CCR operates a website, http://ccrjustice.org, which addresses the issues on which the Center works. CCR staff members often serve as sources for journalists and media outlets, including on issues related to racial justice, racial discrimination, and immigrant rights. In addition, CCR regularly issues press releases, has an active social media presence with thousands of followers, and also issues regular email updates sent to over 50,000 supporters about developments and news pertaining to CCR's work.

**E. Request for Fee Waiver**

The Requesters are entitled to a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) on the grounds that "disclosure of the requested records is in the public interest because it is likely to contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Requesters meet the requirements for a fee waiver because the subject of the request concerns the operations or activities of the government, the disclosure of the information is likely to contribute to a significant public understanding of government operations or activities,

the Requesters' primary interest is in disclosure, and they have no commercial interest in the information. *See* 6 C.F.R. § 5.11(b); 22 C.F.R. § 121.16(a); 28 C.F.R. § 16.10(k).

As described above, the Requesters are non-profit organizations dedicated to educating the public and advocating for civil rights, human rights, and immigrant rights, and have undertaken this work in the public interest and not for any private commercial interest. Similarly, the primary purpose of this FOIA request is to obtain information to further the public's understanding of federal immigration actions and policies, and their effects on immigrant communities. Access to this information is crucial for Requesters, and the communities they serve, to evaluate government procedures and actions, as well as their potential detrimental effects.

Requesters will make any information that they receive as a result of this FOIA request available to the public, including the press, at no cost. Disclosure in this case, therefore, meets the statutory criteria, and a fee waiver would fulfill Congress' legislative intent in amending FOIA. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309,1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers of noncommercial requesters.'")(citing *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987)).

In the alternative, if no fee waiver is granted and the fees exceed $250.00, please contact the Requesters to obtain consent to incur additional fees. Processing fees should be limited pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by ... a representative of the news media.").

**F. Request for Expedited Processing**

Expedited processing of this request is required because there is a "compelling need" for the information. See 5 U.S.C. § 552(a)(6)(E)(i)(I). A "compelling need" may exist where there is an "urgency to inform the public concerning actual or alleged Federal Government activity," and the requesting party is "primarily engaged in disseminating information." 6 C.F.R. § 5.5(e)(ii); 28 C.F.R. § 16.5(e)(l)(i); 22 C.F.R. § 171.11(f).

There is an urgent need to inform the public of the policies and decision-making regarding removals to Areas of Conflict, specifically with the recent removals of Cameroonian migrants. The recent Cameroonian deportations have already generated substantial news coverage, with one of the earliest news reports warning against these deportation flights coming from Amnesty International on October 9, 2020.[5] The deportation flights eventually garnered national attention with major outlets covering the potential humanitarian concerns, such as from NBC News, Human Rights Watch, and the Washington Post.

On October 14, 2020, NBC News reported on several complaints from Cameroonian migrants who were coerced by ICE through the use of force, including the use of pepper spray, to

---

[5]Press Release, Amnesty International, The U.S. Must Not Deport People To Cameroon (Oct. 9, 2020) *available at* https://www.amnestyusa.org/press-releases/the-u-s-must-not-deport-people-to-cameroon/.

sign their own deportation papers. [6] In December, Human Rights Watch called on the U.S. Government to halt these deportations into Areas of Conflict[7], cautioning that hundreds of Cameroonians had been killed in the Anglophone North-West and South-West regions. [8] Most recently, NBC News and the Washington Post both report that over 40 members of Congress have urged President Biden to stop these ICE deportations into Areas of Conflict, calling on the President to "do better" than the previous administration.[9] The Congress members also note that "[c]ivilians in Cameroon are caught between multiple and complex armed conflicts between Anglophone separatists, the government, and Boko Haram (a jihadist terrorist group)."[10] The reasoning behind deporting Cameroonian migrants back into an Area of Conflict is frightening and unclear, and it is in the immediate public interest to obtain information around it. These concerns are heightened with the added impact of ICE deportations contributing to the spread of COVID-19 during the global pandemic. Further, as shown above, Requesters — Project South and SPLC — are primarily engaged in disseminating information and are entitled to prompt and efficient responses to the request for information.

**G. Conclusion**

The Requesters certify that the above information is true and correct to the best of the Requesters' knowledge. If this Request is denied in whole or in part, Requesters' ask that DHS, ICE, EOIR, and DOS justify all deletions by reference to specific exemptions of FOIA. The Requesters expect DHS, ICE, EOIR, and DOS to release all segregable portions of otherwise exempt material. Additionally, Requesters reserve the right to appeal a decision to withhold any records or a decision to deny this application for expedited processing and fee waiver.

If you have any questions regarding the processing of this request, please do not hesitate to contact Ian Head at:

---

[6] Julia Ainsley, *Cameroonian asylum seekers pulled off deportation plane amid allegations of ICE abuse*, NBC News (Oct. 14, 2020, 7:22 PM) available at https://www.nbcnews.com/politics/immigration/cameroonian-asylum-seekers-pulled-deportation-plane-amid-allegations-ice-abuse-n1243468.
[7] *See* Section A. Definitions on Page 2 of this Request.
[8] *See US: Protect Cameroonians From Deportation*, Human Rights Watch (Dec. 18, 2020, 10:00 AM), https://www.hrw.org/news/2020/12/18/us-protect-cameroonians-deportation.
[9] *See* Julia Ainsley, *More than 40 members of Congress ask Biden to halt deportation of Cameroonians to unsafe homeland,* NBC News (Feb. 17, 2021, 11:57 AM), https://www.nbcnews.com/politics/immigration/more-40-members-congress-ask-biden-halt-deportation-cameroonians-unsafe-n1258103; Maria Sacchetti and Arelis R. Hernández, *Black lawmakers urge Biden to stop the deportation of Black immigrants,* The Washington Post (Feb. 12, 2021, 8:09 PM), https://www.washingtonpost.com/immigration/black-immigrants-deportations-biden/2021/02/12/5f395932-6d54-11eb-ba56-d7e2c8defa31_story.html.
[10] *See* Letter from Cong. of the U.S. to President Biden and Sec'y Mayorkas of U.S. Dep't of Homeland Sec. (Feb. 17, 2020), https://assets.documentcloud.org/documents/20485386/210217-tps-cameroon-on-letterhead-letter_final.pdf.

Ian Head
ihead@ccrjustice.org (preferred)
Center for Constitutional Rights
666 Broadway, Floor 7
New York, NY 10012
212-614-6470

Thank you,

Ian Head
Senior Legal Worker and
Open Records Project Coordinator
Center for Constitutional Rights