# EXHIBIT H



Office of Summary Removal Live Removal

Document Number: ERO 11.5802

Approved by: Marlen Piñeiro

Title: Assistant Director, Removal

Date signed: September 1, 2015

U.S. Immigration
and Customs
Enforcement

*ICE Air Operations Handbook*

*Edition 1.0: 2015*

Enforcement and Removal Operations

# ICE Air Operations Handbook

### Table of Contents

| | |
|---|---|
| Foreword | 5 |
| Introduction | 6 |
| Background | 6 |
| **AIR CHARTER OPERATIONS** | 6 |
| Position Roles and Responsibilities Related to ICE Air Operations' Missions | 7 |
| A.  ICE/ERO Detention and Deportation Officer | 7 |
| B.  ICE/ERO Supervisory Detention and Deportation Officer | 7 |
| C.  ICE/ERO Enforcement & Removal Assistant/Travel Coordinator | 7 |
| D.  ICE/ERO Flight Officer in Charge/Deportation Officer | 8 |
| E.  ICE/ERO Ground Officer in Charge | 8 |
| F.  ICE HSI/ERO Assistant Attaché for Removal | 8 |
| G.  Contracting Officer Representative | 9 |
| H.  Pilot in Command | 9 |
| I.  Rear Cabin Security Crew | 9 |
| J.  Flight Nurse | 9 |
| Seat Reservations, Documentation Requirements and Manifest Procedures | 9 |
| A.  Scheduling | 9 |
| B.  Documentation Requirements for all ICE Movements | 10 |
| C.  Waiver of Documentation Requirements | 12 |
| D.  Additional Documentation According to Type of Movement | 12 |
| E.  Transferring Detainees from One ICE Office to Another | 13 |
| Loading-Offloading Operations | 13 |
| A.  Arrival at Aircraft | 13 |
| B.  Alien Exchange Vehicles | 14 |
| C.  Security Procedures | 14 |
| D.  Boarding | 14 |
| E.  Emergency Exit Row Seating | 14 |
| F.  Carry-on Items | 15 |

2

*ICE Air Operations Handbook*

*Edition 1.0: 2015*

| | | |
|---|---|---|
| G. | Property | 16 |
| H. | Approved Property Bags | 16 |
| I. | Restraint Requirements | 17 |
| J. | Detainee Meals and Incidentals | 17 |

Special Interest Cases ..... 17

Fugitives and/or High Profile Removals ..... 18

Violent and Escape Risk Detainees/Failure to Comply (FTC) ..... 18

ICE Health Service Corps (IHSC) ..... 18

| | | |
|---|---|---|
| A. | Medical Considerations | 18 |
| B. | Tuberculosis Clearance for Air Transport | 18 |
| C. | Additional Guidance for Flight Nurses on TB | 19 |
| D. | Prescription Medication | 20 |
| E. | Narcotics and Controlled Substances | 20 |
| F. | Special Medical Treatment | 21 |
| G. | Decreased Mobility | 21 |
| H. | Medical Conditions Requiring Evaluation | 21 |
| I. | Exceptions to Medical Provisions | 21 |

Female Detainees, Juveniles and Family Units ..... 21

| | | |
|---|---|---|
| A. | Female Detainees | 21 |
| B. | Juveniles | 22 |
| C. | Family Units | 22 |

Emergency Air Movements ..... 23

Access to ICE Air Charter Flights ..... 23

Request for Media Access to ICE Air Charter Flights ..... 23

Contact Information for Air Charter Operations ..... 24

**COMMERCIAL AIR OPERATIONS** ..... 24

Overview ..... 24

Operational Process ..... 24

ERO Country Removal Guidelines (CRGs) & Restrictions ..... 24

| | | |
|---|---|---|
| A. | Travel Request | 24 |
| B. | Purchase of Business Class Airfare | 25 |
| C. | Cable Notification | 25 |

2019-ICLI-00053   26

*ICE Air Operations Handbook*

Edition 1.0: 2015

| | | |
|---|---|---|
| D. | Department of State eCC System | 25 |
| E. | Group Removals | 26 |
| F. | Canadian Removals | 26 |
| G. | Escort Threat Assessment | 27 |

Commercial Removal Process Timeline Change/Cancellation Process    27

| | | |
|---|---|---|
| A. | Notification Process | 27 |
| B. | Expedited Removal | 28 |
| C. | Special Cases | 29 |

Acronym List    31

4

## Foreword

This handbook establishes and outlines the standard operating procedures of the Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO), Assistant Director for Removal, ICE Air Operations (IAO) Division for the pre-boarding, embarking and disembarking of detainees/deportees on all charter and commercial aircraft, and the protocol for all required documentation. These procedures include the proper formatting and submission of the Record of Person and Property Transferred (I-216) and associated required documentation, such as, but not limited to: medical summary, Warrant of Removal (I-205), Warning to Alien Ordered Removed or Deported (I-294), Notice to Alien Ordered Removed/Departure Verification (I-296), Record of Deportable Alien (I-213), travel document, and photo for transfers and/or removal.

This handbook will assist in ensuring uniformity of all 24 ERO Field Offices' personnel in the preparation of property and detainees/deportees when being transported via IAO charter aircraft. This handbook establishes guidance for both internal transfer (IT) domestic missions and/or repatriation flights.

IAO's Air Charter Operations operates charter aircraft to countries throughout the world, and domestically throughout the United States. IAO *must* ensure compliance with all Federal Aviation Administration (FAA) laws, rules, regulations, policies and guidelines for the safe operation of all charter aircraft. Additionally, IAO *must* ensure fiscal responsibility and compliance with the Federal Acquisition Regulation (FAR) laws, rules, regulations, policies and guidelines in the expenditure(s) of appropriations allocated for ICE Air Operations services.

Also within IAO, Commercial Air Operations coordinates and supports escorted and unescorted commercial removals via commercial air.

I am confident that this Handbook will assist ERO personnel in the preparation for ICE Air missions, and will ensure uniformity of the operating procedures/protocols aboard all IAO aircraft, and when traveling on official business via commercial air.


Marlen Piñeiro
Assistant Director for Removal
Immigration and Customs Enforcement
Enforcement and Removal Operations

*ICE Air Operations Handbook*

## INTRODUCTION

### Background

ERO's mission is to identify, arrest, and remove aliens who present a danger to national security or are a risk to public safety, as well as those who enter the United States illegally or otherwise undermine the integrity of our immigration laws and our border control efforts. ERO upholds America's immigration laws at, within and beyond our borders through efficient enforcement and removal operations.

The primary goal of IAO, which falls within ERO's Removal Division, is to provide aviation support, both domestically and internationally, to the 24 ERO field offices strategically located throughout the United States. IAO is comprised of two units: the Air Charter Operations Unit (ACO) and the Commercial Air Operations Unit (CAO). ACO's objective is to transport detainees who have been ordered removed from the United States to their countries of origin and/or to transfer detainees domestically throughout the United States to various ICE-managed detention facilities via charter aircraft. CAO coordinates and supports escorted and unescorted removals via commercial air.

## AIR CHARTER OPERATIONS

ICE-leased aircraft are managed by the Department of Homeland Security (DHS) ICE ERO IAO in Mesa, Arizona. The Arizona Removal Operations Coordination Center (AROCC) is located at the Phoenix-Mesa Gateway Airport and accommodates the staging of up to 157 detainees. IAO ACO manages various aircraft-related activities that include, but are not limited to, providing for the safe and secure transport of persons and property. ICE detainees transferred or removed on IAO charter aircraft remain in ERO custody and adhere to ICE transfer and transportation policies. IAO is responsible for transporting ERO detainees, while the sending ERO field offices retain responsibility for case management, processing for removal and/or transfer, transportation to the embarkation point, and detainee property. Movements via IAO are routinely coordinated with the HQ Field Operations Division to ensure the efficient management of ERO's detention resources. IAO also has the flexibility to address field office requests for large-scale, domestic transfer air movements; and, when deemed necessary, coordinates such transfers with HQ Field Operations. IAO also provides support for a multitude of other initiatives that arise. There are five IAO ACO operational locations strategically located throughout the United States: San Antonio, Texas; Brownsville, Texas; Alexandria, Louisiana; Miami, Florida and Mesa, AZ.

All operational locations conduct missions to Central American countries such as Guatemala, El Salvador, and Honduras, and also support Interior Repatriation Initiative missions (IRI) to Mexico City. Southern cities, such as San Diego, California and Harlingen, Texas, are used for Mexican removal operations. In addition, all operational locations conduct flights domestically to internally transfer newly apprehended detainees or to transfer detainees to ICE-managed detention centers throughout the United States.

The operational locations also conduct missions to Cuba, Haiti, Jamaica, Colombia, Ecuador, Nicaragua and the Dominican Republic on a periodic basis (monthly or bi-monthly) through negotiations with each respective country's government.

In addition to the daily charter flights, IAO ACO conducts Special High Risk Charter flights (SHRC) to remove Failure to Comply (FTC) and significant High Profile Removals (HPRs) from the United States. These missions are coordinated via Removal and International Operations (RIO) to return alien nationals to countries throughout the world. In the past, IAO has conducted SHRCs to Nigeria, Cambodia, Pakistan, the Philippines, Ghana, Liberia, Jordan, Palestine, Egypt, Albania, Palestine and Indonesia, Central Asia, the Pacific Rim, Africa and other European/Middle Eastern countries.

## POSITION ROLES AND RESPONSIBILITIES RELATED TO IAO MISSIONS

### A.    Detention and Deportation Officer

The IAO Detention and Deportation Officer (DDO) is responsible for managing and coordinating all ICE ERO IAO charter aircraft and long-range charter missions both outside and within the borders of the United States. IAO missions are guided by various internal and external policies and procedures, such as medical regulations, financial obligations and contractual guidelines. In addition, IAO is accountable for the coordination and resolution of any operational or logistical issues related to movements using ICE leases. At times, this requires close coordination with ICE HQ, field management personnel, and/or contract representatives.

### B.    Supervisory Detention and Deportation Officer

The Supervisory Detention and Deportation Officer (SDDO) is responsible for the coordination and resolution of issues related to ICE ERO daily operations and movements using ICE charter aircraft. The SDDO monitors and evaluates the delivery of IAO services to field offices, as well as the methods and techniques used to provide those services. The SDDO serves as part of a Flight Following Team (FFT), monitoring flight activities and addressing issues and/or concerns to IAO management staff. In addition, the SDDO serves as a liaison officer between ICE ERO charter companies and IAO. The SDDO at the originating operational location should be contacted immediately for any operational issues concerning any of the flights. The Mesa 24-hour-duty number can be found on <ins>page 24</ins> of this handbook under Contact Information.

### C.    Enforcement and Removal Assistant / Travel Coordinator

The Enforcement and Removal Assistants (ERA) / Travel Coordinators (TC) are ICE ERO scheduling coordinators and Country Clearance Request Administrators for IAO-managed charter aircraft as well as for removals via commercial air. IAO staff coordinates all domestic movement, as well as Mexican removals, international flights, and the staging and transfers of detainees. The ERA/TC supports all 24 field offices, providing them with scheduling dates for routine Central/South American, Caribbean, and Mexican missions. In addition, they are

2019-ICLI-00053    30

responsible for preparing the manifests from the I-216s submitted by the field offices, scheduling flight(s) and/or hotels, and requesting and obtaining country clearance(s).

**D.    Flight Officer in Charge / Deportation Officer**

The Flight Officer in Charge (FOIC) is responsible for overseeing the rear cabin crew and detainees; communicating with the IAO FFT about the progress of the mission at each leg of the flight; communicating with IAO regarding any changes to the manifest and itinerary; ensuring that all required documents are correct before dissemination to appropriate parties; coordinating aircraft security matters; and advising the flight crew when exchange operations are complete for continuation of the flight mission. The FOIC is responsible for reviewing all required documentation to ensure compliance with established ICE ERO removal guidelines. The FOIC identifies and verifies required travel documentation and property for detainees on all continental United States (CONUS) and Outside the Continental United States (OCONUS) flights. The FOIC assigned to each mission is also responsible for contacting IAO prior to departure and upon landing at each location, reporting any discrepancies on the manifest/I-216, advising of delayed departures, and any other operational/logistical concerns or issues pertaining to the flight.

FOICs conducting ICE Air flight operations will wear the official ICE Officer polo shirt and neat, presentable pants. Exceptions to the uniform for personnel meeting with foreign officials to conduct negotiations or liaison activities, or when conducting SHRCs, will be made by the IAO Deputy Assistant Director and/or their designee.

**E.    Ground Officer in Charge**

The ERO Field Office at each detainee exchange location will assign a Ground Officer in Charge (GOIC) to coordinate with the FOIC. The GOIC is responsible for identifying and assigning ground personnel, as well as for establishing communication with airport security and the FOIC. The GOIC is also responsible for briefing the FOIC on the detainees being presented (i.e., total number, medical/psychological cases, special interest cases, and combative individuals), and ensuring that all requisite and proper travel documentation has been submitted, to include but not limited to:  Record of Person or Property Transferred (I-216), a medical summary, Warrant of Removal(I-205), Warning to Alien Ordered Removed or Deported (I-294), Notice to Alien Ordered Removed/Departure Verification (I-296), Record of Deportable Alien (I-213), Property Tag (I-77), travel document, and photo for transfers and/or removals, etc. The GOIC will remain available in the event that any issues arise during the course of the embarking/disembarking of the airlift.

**F.    Assistant Attaché for Removal**

The Assistant Attachés for Removal (AAR) work diligently with foreign partners to abide by international laws and negotiate acceptance of their nationals upon their return. The AARs coordinate to ensure overseas safety in ground management and provide operational support, as well as assist in the return of alien nationals on routine and special SHRC missions. These officers are located in Europe, Central and South America, the Caribbean, Asia and Africa.

*ICE Air Operations Handbook*

*Edition 1.0: 2015*

### G. Contracting Officer Representative

Contracting Officer Representatives (COR) are qualified individuals appointed by the Contracting Officer (CO) to assist in the technical monitoring or administration of a contract. IAO CORs are assigned specific air charter contracts and specific locations for compliance oversight of contractual requirements.

Although CORs can be employed on all types of contracts, they are extremely useful in the more complex services, supply, and/or construction contracts. CORs perform, or cause to be performed, all necessary inspections; including documenting the inspection and submitting to the CO, as required, a report concerning performances of services rendered under the contract.

### H. Pilot in Command

The Pilot in Command (PIC) is responsible for all matters related to flight safety and service of the aircraft. The PIC is also responsible for notifying the FOIC of any unscheduled stops due to inclement weather conditions; mechanical difficulties or unforeseen matters; and also for commanding orders during any evacuation. In the event that the PIC or co-pilot are not available or are unable to issue any commands during an emergency, the FOIC will be in charge of issuing orders, evacuating detainees, and ensuring the safety and security of the crew members.

### I. Rear Cabin Security Crew

Rear Cabin Crew are members of an aircrew employed by the contractor primarily to ensure the safety and security of the aliens aboard an IAO aircraft. They provide security throughout the mission and often assist in duties such as providing meal and beverage service as a secondary responsibility.

### J. Flight Nurse

The Flight Nurse serves as the primary individual to determine suitability of a detainee's health status to board an ICE Air aircraft, monitor health status during the flight and report any medical issue and/or discrepancies to the assigned FOIC.

## SEAT RESERVATIONS, DOCUMENTATION REQUIREMENTS AND MANIFEST PROCEDURES

### A. Scheduling

1. OCONUS ICE Air scheduling must receive the finalized and approved I-216 from the sending office (Generated and formatted from ENFORCE Alien Detention Module (EADM)) five business days in advance, via email.
2. For Mexican removals, ICE Air scheduling must receive the finalized and approved I-216 24 hours prior, via email.

9

*ICE Air Operations Handbook*

Edition 1.0: 2015

3. CONUS ICE Air scheduling must receive the finalized and approved I-216 24 hours prior to domestic missions (internal transfers), via email.

Please note that *revisions* for OCONUS missions may be accepted no less than 72 hours prior to the mission date. Revisions for domestic missions, with the concurrence of the sending and receiving office, may be accepted prior to initial departure date/time. However, last minute additions from the sending office are subject to approval from the receiving office, the FFT and the FOIC, and should be avoided to the greatest extent possible in order to prevent ground delays and possible rejection of the alien(s) on the flight line at the receiving location(s).

The ICE Air Mailboxes' addresses are:

| | |
|---|---|
| **IAO-COLOMBIA** | **IAO-CUBA** |
| **IAO-DOMESTIC MISSIONS** | **IAO-DOMINICANREPUBLIC** |
| **IAO-ECUADOR** | **IAO-ELSALVADOR** |
| **IAO-GUATEMALA** | **IAO-HAITI** |
| **IAO-HONDURAS** | **IAO-IRIMEXICO** |
| **IAO-JAMAICA** | **IAO-NICARAGUA** |

**B.    Documentation Requirements for all ICE Movements**

After the sending office coordinates with the receiving office for domestic internal transfers (ITs), or if the sending office is requesting seats on a removal mission, contact the IAO office in Mesa by email to schedule air transportation and seat reservation(s). Note on the I-216 the point of contact who provided authorization to accept the transfers by the receiving office and/or who is requesting seat reservation(s) for removals.

All field offices are to enter all detainee transportation data using the I-216 manifest builder within the Enforce Alien Detention Module (EADM), regardless of the mode of transportation, for any alien who is to be transported to any location for any reason. Field personnel will no longer use desktop versions of the I-216 forms and/or Excel (.xlsx format) versions of the I-216 saved to a local desktop. The use of these versions of the I-216 is strictly prohibited, as these forms create serious data quality and integrity issues within EADM. Therefore, as of February 1, 2014, any I-216 form not generated using the manifest builder within EADM is rejected by IAO and returned to the originating field office. Ten copies of Form I-216 must be presented prior to commencing the boarding process on all ICE Air flights.

Regarding the movement of Unaccompanied Children (UC), prior approval must be obtained from the receiving location(s) by the sending location(s), as per guidance outlined in the February 24, 2004, memorandum, *Placement of Unaccompanied Alien Children*, with approval annotated on the I-216. A completed Form I-770, Notice of Rights and Request for Disposition, shall accompany all juveniles; this notification is required to be given to all persons who are

10

taken into custody and who either appear, are known, or claim to be less than eighteen years of age.

For UC removal flights departing a staging location for an international destination, a copy of the I-216 signed by the receiving government official must be placed into the UC's A-file for verification of safe return, per memorandum *Repatriation and Custody Transfer of Unaccompanied Alien Children to Foreign Government Officials* issued on April 17, 2008.

As per Section 7.4 of the Performance Based National Detention Standards (PBNDS), *"Detainee Transfers,"* a medical summary, I-205, I-294, I-296, I-213, I-77, travel document, and photo must accompany all aliens for transfer and/or removal. To expedite the transfer process, all medical, travel and removal documents must be attached to an I-216 in the same order as the names of the alien(s) appear on the I-216(s). In all movements, all detainees must be entered into (b)(7)(E)                    prior to boarding an ICE Air flight.

For removal flights departing a staging location to international destinations, the I-205 or I-296 will be completed by the **sending** ICE ERO officers verifying departure of the aircraft from a staging location for removal missions. Upon completion of the executed/verified departure documents and in order to secure their return, field offices are to provide an envelope with the Docket Control Office's current address.

For detainees classified as "new apprehensions," for which medical information is unavailable, a blank medical summary form with the detainee's name, date of birth, and alien number will be required. In the event of a flight diversion to an alternate location or in an onboard medical emergency, the flight nurse may then use this form during symptom screening.

The ICE Air Flight Medical Provider will conduct a visual screening consistent with current ICE policy and procedures on those detainees lacking medical summary information (new apprehensions) who are delivered to the aircraft. Any ICE detainee who fails to pass screening by a flight medical provider and/or is suspected of having a health-risk condition potentially contagious to other detainees, staff and/or third parties, will be denied boarding and referred to an ICE approved facility for screening. For those detainees who have completed a tuberculosis (TB) test, a Medical Summary of Alien in Transfer or its equivalent, will be required from the facility. This medical document must be signed by a doctor or certified medical provider. For those who have been implanted with a TB Tuberculin Skin Test (PPD) that indicates positive, only a negative chest x-ray (CXR) will clear the alien for travel. A symptom screening will not suffice in this situation.

Prior to acceptance for flight, the facility medical staff must clear the transfer of detainees with special medical needs or psychiatric conditions, and prior approval must be obtained from the receiving location(s) by the sending location(s). The sending facility's medical staff shall prepare a Medical/Mental Health Transfer Summary and provide medical instructions/ medication in accordance with PBNDS, *Detainee Transfers*, section Five B. *Responsibilities of the Health Care Provider at the Sending Facility.*

11

In all movements, detainees possessing property are limited to one durable, tear-resistant container (Box, Backpack, Suitcase or ERO-approved bag only), weighing **no more than 40 pounds,** per PBNDS, *Funds and Personal Property*. There must be a completed I-77 for the item, and the I-77 number must be indicated on the I-216.

#### C.  Waiver of Documentation Requirements

Waiver of documentary or informational requirements may only be obtained from the IAO Deputy Assistant Director and/or designee. The requesting office must articulate the reason(s) for which such a waiver may be warranted. Examples warranting a waiver may include urgent operational requirements to transport large numbers of newly apprehended detainees, natural disasters requiring emergent movements, or the inoperability of computer processing systems such as (b)(7)(E) . Prior to submitting a request to IAO, the requesting field office must first obtain concurrence from the receiving field office, and then annotate the name/contact information of the person who granted approval/authorization for the specific movement.

The concurrences from all parties involved must be documented on all I-216s related to the specific movement. Information must include the name of the officer(s) at the receiving office who approved the request, and this information forwarded on to ICE Air Operations.

#### D.  Additional Documentation Requirements According to Type of Movement Detainees Scheduled to Depart the United States to Foreign Countries (This includes Voluntary Returns (VRs) to Mexico, Expedited Removals (ERs), and other detainees subject to an Administrative Final Order of Removal/Deportation.)

All detainees being removed must have completed I-205s/I-296s, as applicable, with a clear and current photo and a clear right index fingerprint. Additionally, all detainees must have the original travel document with photo, as required. Travel documents may not be required for special removal cases pre-arranged by HQ ERO (i.e., Haiti, Cambodia, etc.).

To expedite the return of the executed document, it is required that the sending office(s') address be stamped/written on the I-205/I-296. Upon completion of the executed/verified departure documents and in order to secure their return, field offices are to provide an envelope with the Docket Control Office's current address.

All detainees must be transported with cash in United States currency (unless there is foreign currency in the alien's property). It is the responsibility of the sending offices to ensure that checks and/or debit cards issued by an institution are cashed prior to the transfer/removal. Detainees must retain possession of money, valuables and jewelry as long as none of those items pose a safety or security risk.

Mexican VRs must also have an I-94, "Arrival/Departure Record."

### E.   Transferring Detainees from one ICE Office to Another (not yet ready for removal)

This section ensures that the transfer of detainees from one facility to another will be accomplished professionally and responsibly with respect to notifications, detainee records and the protection of detainee funds and property. This includes new Notice to Appear (NTA) cases, ER cases pending court, Final Order cases pending travel documents, Change of Venue cases, and Room and Board (R&B) cases.

The sending field office will comply with the ICE *Use of Restraints* Policy, ERO 11155.1, effective November 19, 2012, and PBNDS regarding *Detainee Transfer*.

The detainee's A-file must accompany the alien. For R&B cases, only a work folder with the applicable case's specific documentation is required. Money and jewelry are to be placed into a separate and sealed transparent plastic bag) with a completed G-589, Property Receipt, for each detainee. Per the PBNDS, *Funds and Personal Property*, all detainees possessing property are limited to one durable, tear-resistant container (Box, Backpack, Suitcase or ERO-approved bag only), weighing no more than 40 pounds. There must be a completed I-77, and the I-77 number must be indicated on the I-216.

### LOADING-OFFLOADING OPERATIONS

### A.   Arrival at Aircraft

Missions originating from IAO operational locations (Mesa, San Antonio, Brownsville, Alexandria and Miami) require sending field offices to arrive at the airport one hour prior to departure time, to ensure sufficient time for boarding. Sending and/or receiving field offices utilizing IAO scheduled mission stops throughout the day (domestic transfer flights) must report to the airport 30 minutes prior to the arrival of the IAO charter aircraft, to ensure preparedness for immediate embarking/disembarking upon landing, so as not to disrupt or delay scheduled departure times.

*Note: Ground Security will only be required upon request from IAO or the sending and receiving Area of Responsibility for Special Interest/High Profile Removal cases. All ICE Officers must maintain security awareness during alien exchange operations, both within and outside the perimeter.*

### B.   Alien Exchange Vehicles

When the aircraft comes to a complete stop and the engines have shut down, the GOIC and the FOIC will coordinate the positioning of all alien exchange vehicles. Consideration is to be given to visibility and perimeter control. At a minimum, a 50-foot distance must be maintained from the loading stairs of the aircraft and the exchange vehicles.

For safety reasons, vehicles must be parked bumper to bumper or side by side with wheels facing away from the aircraft. The preferred method of parking is bumper to bumper to ensure a secure

perimeter around the aircraft. To avoid potentially dangerous situations, vehicles should be turned off whenever possible.

## C.    Security Procedures

(b)(7)(E)

## D.    Boarding

All vehicles and detainees will be thoroughly searched prior to being brought to the alien exchange location.   Aircraft security personnel will pat down the detainees prior to their boarding the aircraft. A search of detainees at the facility is essential to eliminating contraband, as well as foreign object debris that could damage an aircraft.

## E.    Emergency Exit Row Seating

The FOIC has the authority to direct the seating of the contracted security officers on IAO contract aircraft and should distribute the officers evenly throughout the cabin to maintain safety and security, as well as to aid in the event of an emergency evacuation. In the event that there is a full passenger load, and the FOIC determines – based on the cabin configuration – that the emergency exit row seating must be occupied by detainees, the following will be required prior to seating detainees at the emergency exit row.

1.    It must be determined that the detainee is either a non-criminal or a low-level criminal.
2.    The detainee must be able to speak and understand English.
3.    The detainee must agree to assist in the event of an emergency evacuation.
4.    The detainee must be **unrestrained**.
5.    The detainee must be 18 years of age or older.

14

6. The detainee must have sufficient mobility, strength, or dexterity in both arms and hands, as well as both legs, to follow instructions on the passenger information cards provided by the carrier and located at emergency exit rows.

7. The detainee must have sufficient visual capability to follow instructions on the passenger information cards without the assistance of visual aids beyond contact lenses or eyeglasses.

8. The detainee must have sufficient auditory capacity to hear and understand instructions shouted by a crewmember without assistance beyond a hearing aid.

9. The seat(s) immediately next to the emergency exit doors may **not** be occupied by a detainee at any time, and must be occupied by a contracted security officer if there are unrestrained detainees seated in any seats of the emergency exit row.

   a. When there are unrestrained detainees at the exit, these officers must remain in place (on the ground or in the air) as long as there are unrestrained detainees at, or near, the emergency exit door.

## F.    Carry-on Items

Unless specified differently in this document, items such as books, valuables, religious items, legal materials, and other miscellaneous items will generally be placed with the detainees' stowed property on the aircraft. Detainees with coats, jackets or sweaters will wear them or store them in their property; no carry-on items are allowed, and items will be returned to the delivering agency, office or ICE facility for disposition. During inclement weather, each sending field office will be responsible for providing an adequate supply of coats and/or blankets for use during detainee exchange. Cash will be maintained in the detainees' possession unless it poses a safety or security risk to the mission.

1. **Clothing**: Detainees are limited to one set of adequate and clean clothing on their body. No jail overalls or institutional clothing will be permitted on any ICE Air flights.

2. **Footwear**: All detainees boarding the aircraft are required to wear proper footwear. For safety reasons, high-heeled shoes/boots, steel-toed shoes/boots, and showers shoes/flip-flops are not acceptable on the aircraft.

3. **Jewelry**: For internal CONUS transfer flights, detainees will be permitted to wear a plain wedding band. All other jewelry, including religious medallions, must be packaged with the detainee's property. All ICE detainees on IAO flights, who are being removed from the country the same day, are permitted to keep all monies and jewelry on their person as long as the jewelry is not a security risk. Jewelry that is considered to be a security or safety risk will be stored in the detainees' property.

4. **Removal of Pierced Items from Detainees:** Neither ICE, security personnel, or the flight medical provider will remove any foreign body jewelry, studs, metal pieces, etc., implanted in the skin or body of a detainee. All foreign materials implanted in the skin or body of a detainee scheduled for travel via ICE Air aircraft must be removed at a medical facility and/or by trained medical personnel prior to travel. The removal of such items can potentially cause infection and/or injury to the detainee, and must never be attempted outside an appropriate medical setting. The sending office is responsible for ensuring that any detainee transported via ICE Air aircraft has had any unnecessary foreign objects implanted in his/her skin or body removed. The FOIC will make the final decision for rejection/acceptance of detainees with foreign objects in/on their body and will determine if

2019-ICLI-00053   38

the object may be used as a potential weapon or escape device, or could be considered to be a security risk.

5. **Eyeglasses:** Two pairs of prescription eyeglasses and one soft eyeglass case (without metal inserts) or hard paper cases will be permitted, if carried on the detainee's person.

6. **Contact Lenses:** All contact lens cases in the possession of the detainees will be turned over to the Flight Nurse or the FOIC and placed in personal property.

7. **Hair:** No detainee will be permitted to board with his/her hair bound with any object (rubber bands, ponytail holders, string, bobby pins, beads, etc.). No hair decorations are permitted. Wigs will be permitted for valid medical reasons (hair loss due to chemotherapy, etc.).

8. **Accessories**: Belts, suspenders, bootstraps, chains, neckties, scarves, hats, caps, turbans, and/or gloves are not permitted on ICE Air flights.

## G.    Property

If applicable, property not permitted on the body of a detainee for boarding purposes may be sealed with their other property. All detainee property must be placed in suitable, durable containers (no plastic trash bags) tagged with an I-77. Property information must also be listed on the I-216. All excess detainee property must be shipped by the sending ICE ERO office.

1. **Confiscated and Refused Property:** Property refused by the FOIC will be returned to the delivering agency at the airlift detainee exchange location for disposition/ forwarding. Any item that the FOIC determines could be used as a possible weapon will be taken from the detainee and returned to the delivering ICE official for disposition.

2. **Discrepancies:** Any discrepancies regarding the contents of the transported, sealed detainee property container/box will be resolved between the sending and receiving ICE offices.

3. **Detainee Money:** Although cash is the accepted vehicle for money transfer to foreign soil, checks may also be allowed in very limited, special circumstances. The sending office must coordinate such cases with IAO in Mesa, and the detainee's alien number must be recorded on any check.

**Approved Property Bags**

 

## H.    Restraint Requirements

In accordance with the *Use of Restraints* policy, policy number 11155.1, Section 5.10, effective November 19, 2012, detainees transported by ICE Air aircraft will be fully restrained by the use

16

of handcuffs, waist chains, and leg irons during CONUS and OCONUS flights. Detainees will not be delivered to the airlift in any type of restraint that necessitates removal prior to the alien boarding the aircraft. Flight security personnel will restrain any individual aboard an ICE Air flight who poses a threat to the safety of the mission. ICE-approved handcuffs and leg irons (Hiatt, S&W, Peerless, etc.) will be applied according to policy and procedures. **Series 400 Peerless are not to be used.** All cuffs should have the correct right and left side in their construction. Many inexpensive cuffs have two right sides cuffs attached with a chain, but there should be a mirror image relationship. All restraints will be applied with double bars, locking pins up, and keyholes forward. The FOIC will have final decision as to the use of restraints. (The Use of Restraints on minors is described in the Juvenile Section.)

1. **Exchanging Restraints:** Delivering field offices will exchange restraints on a one-for-one basis during the alien exchange process. Crew members are not authorized to exchange working restraints for damaged or defective restraints.

2. **Removal of Restraints:** Restraints will not be removed for any reason unless approved by the FOIC or the Assistant FOIC.

3. **Special Restraints:** The FOIC has the authority to authorize the type of restraint used on detainees in special circumstances, i.e., spit masks, mittens, leg braces, cargo straps, humane restraint blanket, etc.

4. **Foreign Agreements:** All existing MOUs and other agreements with foreign governments regarding repatriation procedures, including the use of restraints and operations, will continue to be observed.

*NOTE: All restraints will be removed prior to the aircraft door opening at the OCONUS destination locations.*

**I.    Detainee Meals and Incidentals**

The designated ICE officer meeting the aircraft will provide detainee meals as indicated on the official flight manifest. This should include food items, diapers, formula for infants/toddlers, and sanitary supplies for females.

One meal per alien must be provided by the sending ICE office. This meal will include one sandwich and one granola bar (or an acceptable substitute). Due to allergy precautions, no peanut butter or peanut-based products are allowed. Extra water will be provided by IAO if needed. Fruit, chips and condiments (mustard, ketchup, mayonnaise, etc.) are not allowed. Note: Additional meals will be provided for those detainees on a medical-needs basis and as recorded on the Medical Form, as well as on any flight scheduled longer than 10 hours.

**FUGITIVES AND /OR HIGH PROFILE REMOVALS**

If an alien is a special interest case or considered to be a High Profile Removal (HPR), appropriate annotation must be made in the "Status" column of the I-216. Notifications of all HPR movements aboard IAO aircraft will be completed by Field Operations, as soon as the approved operational plan is completed.

## VIOLENT AND ESCAPE RISK DETAINEES/FAILURE TO COMPLY

Advance notification must be provided to IAO in the "Afflicted/Dangerous" column of the I-216 for those detainees being transported by ICE who have exhibited or threatened violence, for whom special custody conditions are required, and for those detainees who have any known gang affiliation. Available supplemental information must be provided by the sending field office to IAO.

Field offices are to ensure that a summary of cases is forwarded in a timely manner to appropriate HQ ERO units, including IAO, prior to scheduling.

## ICE HEALTH SERVICE CORPS

The ICE Health Service Corps (IHSC) oversees medical care and public health services for ICE detainees. IHSC also serves as the medical authority for ICE on a wide range of medical issues, including the agency's comprehensive detainee health care program.

### A.    Medical Considerations

1.    **Psychological Issues:** Those cases requiring psychological care should be identified on the I-216 as "Special Handling" cases in the "Afflicted/Dangerous" column. IAO Mesa must be apprised of these cases so that proper notification and arrangements can be made for/by receiving countries. Detainees who are taking prescribed psychotropic medications must be transferred with their medication and sufficient documentation to allow proper monitoring and treatment of their condition. Detainees on active suicide watch will be refused boarding unless prior approval and medical clearance has been obtained from the Flight Nurse or the FOIC.

2.    **Pregnant Detainees:** Prior approval must be obtained from the receiving location(s) by the sending location(s). Pregnant detainees who are in the first or second trimester of pregnancy may travel via ICE Air aircraft if there have been no medical complications with the pregnancy. The clearance for air travel by a medical provider must be annotated on the medical summary. Those detainees in their third trimester may travel only if the detainee has a written statement from an ICE-contracted physician or an IHSC official authorizing travel by aircraft, and if the detainee is not experiencing any medical problems at the time of boarding. The statement must be dated within 72 hours of the scheduled movement.

### B.    Tuberculosis Clearance for Air Transport

ERO detainees who do not have signs, symptoms, or diagnostic tests indicating confirmed or suspected active TB disease are eligible for air transportation.

Detainees who have been identified during chest radiograph screening and subsequent evaluation with confirmed or suspected TB disease are eligible for air transport after the following criteria are met:

*ICE Air Operations Handbook*

*Edition 1.0: 2015*

1.  The detainee is on multidrug anti-tuberculosis treatment, and the treating provider has determined the detainee to be non-contagious, or;
2.  The treating provider gives an alternate explanation for the abnormal findings and excludes a diagnosis of TB disease.

Detainees who have completed TB screening will have results documented on a transfer summary.

Detainees who do not present with symptoms consistent with TB and have not been tested for TB are eligible for air transport, subsequent to a TB symptom screening by the Flight Nurse (TB testing should be accomplished as soon as feasible at the receiving facility).

Detainees who do not present with symptoms consistent with TB, and have documentation of a positive finding for a TB Skin Test (TST) or Interferon Gamma Release Assay (IGRA), and have not yet had a CXR, are eligible for air transport (a CXR should be scheduled as soon as feasible at the receiving facility).

Detainees who do not present with symptoms consistent with TB and have had a TST placed, but not yet interpreted, are eligible for air transport (the date and time the TST was placed should be documented on the medical transfer summary so it may be interpreted at the appropriate time by the receiving facility).

Detainees who do not present with symptoms consistent with TB and have had blood drawn for an IGRA, with results pending, are eligible for air transport (date of the specimen collection and pending status should be documented on the medical transfer summary for follow-up by the receiving facility).

**C.    Guidance for Flight Nurses on TB Clearance Requirements for Transportation**

Detainees identified via a symptom screening at the flight line by a Flight Nurse as having symptoms consistent with TB will be denied boarding and will be referred back to an appropriate facility for further medical evaluation.

Detainees are eligible for air transportation without environmental controls if they meet the criteria for housing in general population or the following criteria:

1.  No symptoms suggestive of TB assessed and documented within one year prior to transport.

**AND one or more of the following:**

2.  In ICE custody for less than 72 hours, and TB Symptom Screening conducted by Flight Nurse.
3.  Prior positive TST or Interferon Gamma Release Assay (IGRA) and subsequent normal CXR not suggestive of TB disease.
4.  Negative TST or IGRA within one year of scheduled transport.
5.  CXR not suggestive of TB disease.
6.  Three consecutive respiratory specimen[++] microscopy results smear negative for AFB and no clinical suspicion of TB disease.

19

7.   Suspected or confirmed drug-susceptible TB disease; and three consecutive respiratory specimen[++] microscopy results smear negative for acid fast bacilli (AFB); and taking and tolerating multidrug, anti-tuberculosis therapy; and evidence of clinical improvement.
8.   Suspected or confirmed multidrug-resistant (MDR) or extensively drug resistant (XDR) TB disease and three consecutive respiratory specimen[++] microscopy results smear negative for AFB; and taking and tolerating an effective, multidrug, anti-tuberculosis regimen; and evidence of clinical improvement; and produced a series of at least two early morning sputum specimens of good quality, collected on separate days, that are all negative for Mycobacterium tuberculosis (MTB) on culture.
9.   Reliable documentation of recent, successful completion of effective TB therapy and a 15 day supply of medication, if applicable.

**D.   Prescription Medication**

Any detainee requiring prescription medication will be medicated prior to acceptance by the Flight Nurse or the FOIC. Prescribed medications must be delivered to the Flight Nurse. Detainees requesting medication must have at least a seven-day supply of appropriate dosages prior to boarding. Whenever possible, prescription medications should be stapled with the ICE Medical Summary (or equivalent medical form) and the I-216.

Detainees are permitted two respiratory inhalers and one bottle of nitroglycerin tablets on their person.

**E.   Narcotics and Controlled Substances**

The Flight Nurse will account for and secure all Drug Enforcement Agency (DEA) Schedule II, III and IV drugs in his/her custody. Change of custody of narcotics and controlled substances requires a written transfer, as detailed below.

The Flight Nurse and the officer delivering the detainees to the airlift will also:
1.   Note the amount of the transferred dosage on form ICE Medical Summary or its equivalent, (Section II- Medication Required for Care En Route). Information included will be the name of the detainee, alien number, name and dosage of the drug, and the quantity of the drug transferred to the custody of the Flight Nurse.
2.   Document any drugs administered during flight on the medical form. The Flight Nurse and the receiving officer will count the number or quantity of each controlled substance being transferred and will document the amount on the ICE Medical Summary or equivalent form upon arrival of the detainee at the final destination.
3.   Both the Flight Nurse and the receiving officer will print and sign their names on the ICE Medical Summary or equivalent form. The Flight Nurse (or the FOIC on flights without a Flight Nurse) will retain the original copy of the finalized forms; giving one copy to the delivering officer and one copy to the receiving officer.

**F.     Special Medical Treatment**

Detainees requiring special medical treatment (self-catheter, colostomy care) will not be boarded unless the detainee can perform the necessary care or treatment on himself/herself, and the necessary equipment is intact and accompanies the detainee.

In accordance with PBNDS, detainees transferred from one detention facility to another diagnosed with HIV/AIDS must be provided a 30 day supply of medication, as ordered by the prescribing authority.

**G.     Decreased Mobility**

For safety reasons, detainees who are unable to board the aircraft on their own will not be boarded on the aircraft without authorization in advance from the ICE FOIC and/or the IAO SDDO. Transport chairs are available for detainees with decreased mobility or paralysis. Under these circumstances, detainees will need to be transported with wheelchairs, crutches, and/or any other available medical assistance equipment to final destinations. Officers will not carry detainees aboard the aircraft.

**H.     Medical Conditions Requiring Evaluation**

Detainees with conditions such as the following will be refused boarding unless cleared by an IHSC medical provider in addition to approval from the FOIC: infectious (contagious) disease; respiratory condition; gastrointestinal problem (bleeding); uncontrolled seizure disorder; uncontrollable psychiatric behavior; sickle cell disease; kidney failure requiring dialysis; head injury; cardiac condition (history of angina or heart attack); thrombophlebitis of the lower extremities; and dental appliance or wire restricting opening of the mouth that cannot be clipped by IHSC/or authorized medical personnel.

**I.     Exceptions to Medical Provisions**

Unless otherwise noted, the only individuals authorized to grant exceptions to any provision in this section are the Flight Nurse or the FOIC.

## FEMALE DETAINEES, JUVENILES AND FAMILY UNITS

**A.     Female Detainees**

Unless instructed otherwise by IAO, male and female detainees may be transported together on ICE Air flights. Whenever possible, female detainees will be under the visible surveillance of a female officer and separated from male detainees.

## B.   Juveniles

IAO flights will operate in accordance with the Use of Restraints Policy (ERO11155.1), dated November 19, 2012, and the June 6, 2014, memorandum Interim Guidance Regarding the Use of Restraints While Transferring Juveniles on ICE Air Flights in addition to any and all internal IAO Policies.

Minors/Unaccompanied Children (UC) will be separated from unrelated adults at all times during transport and seated in a designated area near officers and under their close supervision.

Any detainee below the age of 18 is considered a juvenile. The Flores Settlement Agreement requires all UCs to be handled in the least restrictive setting; therefore, restraints are not warranted except in exigent circumstances, juveniles being transported by IAO flights shall not be handcuffed or restrained unless an individual juvenile has demonstrated or threatened violent behavior, has a history of criminal activity, or demonstrates a likelihood of escape. In these instances, the use of restraints should be on a strict case-by-case basis and not as a general practice. Juveniles under the age of 12 years old should never be in full restraints. If it is necessary to restrain a juvenile, always consider size, age, gender, and comprehension level when considering the type of approved restraints to apply. Continue to treat all juveniles with courtesy and respect, but do not sacrifice or compromise security to do so.

If a Flight Officer in Charge (FOIC) determines it necessary to restrain an entire group of juveniles on an IAO flight, then that decision must be approved at/or above the Unit Chief level and an After-Action Report must be completed. The same process must be followed when any juvenile under the age of 12 is restrained in any manner.

Minors five years of age and younger are considered "tender age" and require an additional escort to be supplied by the sending field office, as they cannot be cared for by the guards assigned to the mission.

If a tender-age child is accompanied by another family member who is also a juvenile, the juvenile relative cannot be considered responsible for the tender-age child. If they are traveling together, an additional escort will be required for each of them.

## C.   Family Units

Family units will be transported together as much as possible in order to avoid stress separation. Minors who are part of a family unit will travel with at least one parent. Note: *If a parent or guardian is responsible for the juvenile(s) in flight, they should be exempted from restraints. If they pose a threat or safety concern, they would not be the responsible caretaker of the family group.

If an exception arises that requires separation, the officers will document the incident by recording the facts and the reasoning behind such a decision.

Supplies for infants (i.e., diapers, formula, etc.) will be made available during transport whenever applicable.

## EMERGENCY AIR MOVEMENTS

Emergency air movements will be based on unforeseen circumstances such as disturbances and/or riots in ICE ERO facilities, urgent evacuations due to natural phenomena, or other urgent operational reasons. Emergency air movements may also occur due to exigent enforcement operational requirements. All emergency air movements must be authorized by IAO management in Mesa.

## TRAVELING ON ICE FLIGHTS

Only persons assigned to IAO will be transported via ICE aircraft, unless otherwise approved by the IAO DAD. The approval for requests to access ICE aircraft or flight operations will be coordinated through IAO.

## REQUEST FOR MEDIA ACCESS TO ICE FLIGHTS

Media requests must be made in writing and submitted to the ICE Public Affairs Office at least 14 business days in advance of the requested date of access. Requests to board ICE flights (by accredited media, congressional staffers or consular officials) or requests to access IAO (without boarding the aircraft) must be submitted for consideration and concurrence to the appropriate ERO DAD.

If approved, the request will be forwarded to the appropriate HQ ICE component(s), as well as to the IAO DAD, for coordination with ICE Air and the respective field office's staff involved at the flight line to ensure visibility.

Exceptions to the above procedures, due to special circumstances, may be authorized only by the Assistant Director for Removal.
All requests must include:
1. Source and purpose of request;
2. Date, location and duration of the media event;
3. List of equipment to bring on board the aircraft;
4. The name, date, place of birth, and social security number for each individual requesting access;
5. Passport/visa information for all participating media personnel traveling to a foreign destination, non-U.S. citizen media personnel traveling abroad and returning on the same aircraft are responsible for having in their possession appropriate documents required for re-entry into the United States;
6. A signed ICE Hold Harmless Agreement; and, any other information required by HQ ERO. Media representatives are responsible for securing all required visas; and

23

7.    Only the ERO Assistant Director for Removal may authorize exceptions to the above procedures. If media representatives do not follow these procedures and/or secure these approvals, the FOIC will deny media representatives access to the special charter flight.

FOICs that are contacted by media personnel at the aircraft without having the proper authorization are to deny access until proper clearance is acquired.

## CONTACT INFORMATION FOR AIR CHARTER OPERATIONS

SDDOs may be contacted 24 hours a day, seven days a week by phone at (602) 744-[(b)(6); (b)(7)(C)]. Additional contact information can be found on the IAO website within the ICE Intranet.

## COMMERCIAL AIR OPERATIONS

### Overview

IAO's Commercial Air Operations Unit (CAO) is located in Mesa, Arizona and serves as the commercial air transportation coordinating entity within ERO. CAO coordinates all escorted and unescorted commercial removal requests, as well as domestic transfer requests, received from ERO's 24 field offices. CAO is also responsible for coordinating travel and lodging arrangements for visiting foreign officials. These tasks are completed daily by the staff officers, contractors, and ICE ERO AARs, in conjunction with Department of State Regional Security Officers (RSOs) throughout the world.

CAO is charged with the mission of transferring and removing aliens via commercial aircraft, thus executing the final phase of the removal process. CAO strives to improve commercial removals by maximizing the use of direct routes to foreign countries, and minimizing transit situations that require extensive resource coordination, allowing field offices to better utilize officer resources.

### Operational Process

## ERO COUNTRY REMOVAL GUIDELINES (CRGs) & RESTRICTIONS

### A.    Travel Requests

1.    Escorted and Unescorted removal classifications are determined by the field offices utilizing the Escort Determination Chart found in *DROPPM Chapter 16, Appendix 16-4; Enforcement Standard Pertaining to the Escorting of Aliens*.
2.    Field Office Travel Coordinator (FOTC) initiates the ticketing process by submitting a travel request online, through the current Travel Service Provider (TSP).
3.    The request is transmitted to the TSP with a copy either the CAO.UNESCORTED or CAO.ESCORTED mailbox.
4.    Within 24 hours of receipt, the TSP creates and sends an itinerary, based on the request to the FOTC, with a copy to appropriate CAO mailbox.

24

5. The FOTC reviews and either accepts, revises, or declines the itinerary within 24 hours of receipt. The FOTC *must* reply within 24 hours of receiving the itinerary or the TSP *will* consider the itinerary to be accepted and final.
6. FOTC itinerary validation is necessary to ensure travel plans are established before notification cable and Electronic Country Clearance (eCC) are submitted.
7. Unescorted removals require cable notifications while Escorted removals require cable notifications and an eCC.
8. If requested, the TSP will return a revised itinerary to the FOTC within 24 hours of submission. If no revisions are requested, the TSP will purchase tickets and the itineraries will be considered final.
9. The TSP *will* impose a fee for any changes requested after the 24-hour period expires.
10. ICE Air Operations Travel Coordinators (TCs) will submit eCC requests and notifications according to the country RG requirements. After an escorted removal notification cable is submitted, IAO TCs will submit an eCC to the State Department.

**B.    Purchase of Business Class Airfare**

1. First class and business class travel are prohibited unless otherwise approved by the Secretary of Homeland Security and/or the ICE Director, in accordance with ICE Policy Directive 2-4.0, *Approval of First Class and Premium Travel*.
2. Currently, only the ICE Director or his/her designee is authorized to approve business class travel by ERO employees.
3. All ERO requests for premium class travel for removal operations must be routed through the CAO Unit Chief for concurrence prior to transmission to the Office of the Director for final approval.

**C.    Cable Notification**

1. CAO TCs and Staff Officers will generate and submit Notification Cables for all escorted and unescorted removals.
2. Notification Cables convey no particular permission to conduct the removal mission; they simply provide notification to the Embassy/ICE Attaché/RSO in the receiving and transit countries of ICE's intent to conduct a removal to or through their area of responsibility.
3. Notification Cables are different than a Country Clearance. A Country Clearance conveys actual permission for ICE Officers to be in country on official business.
4. Using Microsoft Outlook's Simple Mail Transfer Protocol (SMTP), IAO generates and sends a cable, via email, directly to the Pentagon. The Pentagon receives and converts IAO email/SMTP cable messages into a readable message by Department of State (DOS) Secure Messaging and Routing Terminal (SMART). The DOS SMART receives and processes cables for dissemination to DOS in the respective countries.

**D.    Department of State eCC System**

1. The eCC is the tracking tool owned by DOS, and used by both DOS and ICE.
2. The eCC request has two separate processes: the Requestor (ICE Air TCs and Staff Officers) creates requests for clearance to visit or transit one or more countries, and the ICE

Attaché, AAR, or RSO review submitted requests and determine whether they can be approved, denied, or require more information.

3.   The eCC system is used by ICE Attaché personnel in the host country to facilitate escorted removals and, when necessary, to provide lodging assistance, transportation, meet and greets, and/or prompt evacuation in case of an emergency.

4.   The eCC is the official authorization for U.S. Government personnel to be in country (including transits) *on official business.*

5.   Issuance of an eCC takes into account current travel warnings and safety issues in country. Once eCC clearance is provided, the travel is considered officially authorized by DOS. All official activities fall under the direction of the Chief of Mission. ICE officers and agents engaged in official business (including approved annual leave) shall not travel to other countries, change hotels, or otherwise modify their travel plans without obtaining prior authorization from IAO CAO, in conjunction with the in-country approving official. This is primarily for officer safety. In the event of an emergency, the Chief of Mission will be required to account for the whereabouts, safety and security of all U.S. personnel in country, and will utilize eCC information to do so. During an emergency, ICE also uses the eCC to locate and account for all personnel.

6.   While in country, in conjunction with escorted removal travel (including while on approved annual leave), ICE officers and agents shall immediately comply with all requests to make contact with in-country officials. Because the Chief of Mission granted the presence of ICE Officers in country, officers must comply with instructions to contact Embassy/ICE Attaché/RSO Officials, when directed to do so. Compliance is not optional while on official travel (including annual leave taken in conjunction with official government travel).

## E.   Group Removals

1.   A group removal is an unescorted removal of aliens in groups of six or more.

2.   To request a group removal, the Field office needs to send a completed I-216 to the CAO.UNESCORTED mailbox and to the Travel Service Provider office having jurisdiction.

3.   In the body of the email, the field office needs to state the requested travel date, airport, airline and the desired breakdown (i.e., how many aliens per flight, etc.).

4.   CAO will process the request once OMEGA issues the itineraries.

5.   CAO will notify the applicable ICE Attaché Office of upcoming unescorted group removal.

6.   Unless specifically advised to do so, the field office shall not include the ICE Attaché Office's POC in the travel request.

> *NOTE: CAO does not limit the number of aliens to be processed in group removals, and relies on the airline to accept them.*

## F.   Canadian Removals

1.   IAO CAO coordination is required for Canadian Removals. CAO requires the following documentation to be sent to the [(b)(7)(E)] mailbox in a PDF format:
     a.   I-270** (type legibly);

26

    b.    I-270A** (type legibly);

    c.    Medical paperwork (if the alien has a medical condition);

    d.    I-217;

    e.    Final Order of Removal;

    f.    Notice to Appear (Form I-862);

    g.    Copy of documentary evidence of Canadian Landed Immigrant status or other Canadian Immigration status (TD/Passport/Letter of facilitation);

    h.    NCIC Wants/warrants in "additional comments" on I-270A (if applicable, state if active wants/warrants exists in U.S. or Canada or both);

    i.    Intended address upon return to Canada; and

    j.    Itinerary (if applicable).

2.    CAO will coordinate the removal with the Canadian Border Security Agency (CBSA) prior to submitting the Notification Cable.

3.    Canadian Landed Residents should follow the same procedure as Canadian citizens.

4.    All Canadian subjects who are being removed by commercial air, regardless of citizenship and whether escorted or unescorted, are required to possess a valid passport or valid TD from the Canadian consulate.

5.    If a subject is being removed via land transportation, the subject can possess a birth certificate, an expired passport (not to exceed six months), or a valid TD from the Canadian consulate.

## G.    Escort Threat Assessment (ETA)

1.    An ETA is required for all alien removal travel conducted via commercial aircraft.

2.    The classification officer is required to make a threat assessment of each detainee, or group of detainees, using the ETA worksheet, and then recommend a Class Descriptor. The first and second-line supervisors will review this recommendation, assign a "final" Class Descriptor, and complete the worksheet. A supervisor who does not concur with the recommended Class Descriptor must justify his/her alternative assessment in the comments section. Threat factors include criminal background, propensity for violence or disruptive behavior, potential threat to national security, potential risk to the public, length of flight, layover durations, , if the alien has been a victim of a sex crime by a member of the opposite gender, medical conditions, age, and ability to resist an officer's control.

## COMMERCIAL REMOVAL PROCESS TIMELINE CHANGE/CANCELLATION PROCCESS

## A.    Cancellation Notification Process

1.    In January 2008, ERO instituted an authorization process for changes and cancellations in response to an increasing volume of changes and cancellation requests from field offices.

2.    After the 24-hour itinerary validation period has expired, changes and cancellation requests must be authorized by a staff officer within CAO.

3.    A designated FOTC or higher ranking officer must approve a change or cancellation request being submitted to the TSP. The FOTC must ensure that the proper form is used

27

when making all requests via the TSP website. (i.e., change form for changes and cancellation form for cancellation requests).

4.   Notification starts by submitting a cancellation or change request to CAO and to the TSP.

5.   Staff officers within IAO will forward authorized or declined requests to the TSP, the IAO TC responsible for the requesting AOR, and also to the requesting FOTC.

6.   If requests are incomplete and/or are submitted incorrectly, CAO staff will communicate directly with the requesting FOTC. (The TSP is not routinely included in internal/routine correspondence.)

7.   For removals transiting more than one country, the sending field office *must* make notification of the change/cancellation to the ICE Attaché office for both the transit and destination countries.

8.   When a change or cancellation occurs within 24-48 hours of a scheduled removal (or in route), the field office and/or FOTC is responsible for making notifications to the applicable ICE Attaché Office(s).

9.   Contact should be made by telephone via X-SECTOR (800-973-2867) to one of the following until notification is achieved (in this order):

   a.   The ICE Assistant Attaché for Removal (or ICE Rep)
   b.   The ICE Attaché
   c.   The Department of State Regional Security Officer (RSO)
   d.   The ICE Air Operations CAO Duty Officer at (202) 423 (b)(6); for further guidance on notifications.

10.  Field offices should be persistent in their attempts to make the required notification(s) until contact is made through one of the methods listed above. As a last resort, send an email to the ICE Attaché Office and CAO and explain the reason(s) why notification is being made electronically.

11.  FOTCs are to reach out to ICE Attaché Offices for last-minute changes and cancellation matters ONLY. FOTCs must contact IAO CAO for any other routine matters regarding removal questions/issues. Any last-minute changes must be operationally necessary.

12.  Additional notes regarding changes and cancellations, per the August 25, 2010, ICE Memorandum issued by former Assistant Director Robert P. Helwig, *Guidance Regarding Travel Itineraries, Country Clearances Notifications and Expedited Country Clearances*, include:

   a.   Officers are prohibited from changing or cancelling any part of their itinerary (i.e., flight/hotel arrangements) without prior approval from ICE Air CAO.
   b.   All authorized changes and cancellations must be made through the TSP, and not directly with the airline.

**B.    Expedited Removal**

1.   Per law, UC cannot be issued an expedited removal.

2.   Allowed for exceptional cases *only*.

3.   Processing of an expedited request *does not guarantee* approval by host country.

   a.   Field offices must submit a request to CAO via the dedicated mailbox at (b)(7)(E) documenting the need to expedite.

28

4.  The subject line of the email should reference the subject being removed, e.g., Expedited Request for Escorted/Unescorted Removal; A098765432; Smith; UK.
5.  The body of the email must summarize (in sufficient detail) the following:
    a.  Justification for the Expedited Request;
    b.  Alien's Biographical Information;
    c.  Criminal History (Including Wants/Warrants);
    d.  Medical History; and
    e.  Behavioral History.
6.  An Expedited Removal request should also include the following attachments:
    a.  A Copy of the Travel Document;
    b.  The Escort Threat Assessment;
    c.  Medical Summary (when applicable); and
    d.  Copy of Itinerary.

## C.  Special Cases – Visa Waiver and Airline Expense Cases

1.  Visa Waiver and Airline Expense Cases are requested using the Special Request button found on the OMEGA website at (b)(7)(E)
2.  Field offices must submit documentation to the TSP for the carrier via fax at (910) 938-3601 or by email/scan. Required documentation includes passport, I-94W, I-259, E-ticket, and the reservation and/or reservation number.
3.  The carrier will return an itinerary to the TSP within 24-48 hours. More complicated cases may take longer.
4.  Once the carrier accepts responsibility and issues an itinerary, it is forwarded to the TSP, who in turn issues a ticket.

29

*ICE Air Operations Handbook*

*Edition 1.0: 2015*

## Acronym List

| | |
|---|---|
| AAR | Assistant Attaché for Removal |
| ACO | Air Charter Operations |
| AFB | Acid Fast Bacilli |
| AOR | Area of Responsibility |
| AROCC | Arizona Removal Operations Coordination Center |
| BDU | Battle Dress Uniform |
| CDF | Contract Detention Facilities |
| CAO | Commercial Air Operations |
| CONUS | Continental United States |
| CRG | Country Removal Guidelines |
| CXR | Chest X-Ray |
| DAD | Deputy Assistant Director |
| DEA | Drug Enforcement Agency |
| DDO | Detention and Deportation Officer |
| DHS | Department of Homeland Security |
| DO | Deportation Officer |
| DOCC | Detention Operations Coordination Center |
| EADM | ENFORCE Alien Detention Module |
| ERA | Enforcement and Removal Assistant |
| ER | Expedited Removals |
| ERO | Enforcement and Removal Operations |
| FOD | Foreign Object Debris |
| FFT | Flight Following Team |
| FOIC | Flight Officer in Charge |
| FOTC | Field Office Travel Coordinator |
| FOS | Flight Operations Supervisor |

30

*ICE Air Operations Handbook*

*Edition 1.0: 2015*

| FTC | Failure to Comply |
|---|---|
| GOIC | Ground Officer in Charge |
| HPR | High Profile Removal |
| HQ | Headquarters |
| IAO | ICE Air Operations |
| ICE | U.S. Immigration and Customs Enforcement |
| IGRA | Interferon Gamma Release Assay |
| IGSA | Intergovernmental Service Agreement Facilities |
| IHSC | ICE Health Service Corps |
| IRI | Interior Repatriation Initiative |
| IT | Internal Transfer |
| KO | Contracting Officer |
| MDR | Multidrug-Resistant |
| MSS | Mission Support Specialist |
| MTB | Mycobacterium Tuberculosis |
| NTA | Notice to Appear |
| OCONUS | Outside the Continental United States |
| PBNDS | Performance-Based National Detention Standards |
| PIC | Pilot in Command |
| PPD | Tuberculin Skin Test |
| SDDO | Supervisory Detention and Deportation Officer |
| SHRC | Special High Risk Charter |
| TB | Tuberculosis |
| TC | Travel Coordinator |
| TSP | Travel Service Provider |
| UC | Unaccompanied Child(ren) |
| VR | Voluntary Return |

2019-ICLI-00053   54

*ICE Air Operations Handbook*

*Edition 1.0: 2015*

XDR          Extensively Drug Resistant

32